## CITY OF HOUSTON v. SCOTTISH RITE BENEV. ASS'N. (No. 7218.)

(Court of Civil Appeals of Texas. · Galveston. June 3, 1916. Rehearing Granted · June 16, 1921.)

On Motion for Rehearing.

Taxation ⬯241(3)—Masonic association not an institution of "purely public charity" for exemption purposes.

Incorporated Scottish Rite Benevolent Association, a Masonic order, organized, according to its charter, to provide for the relief of needy Masons, their wives, widows, mothers, and children, etc., *held* not an institution of "purely public charity," within Const. art. 8, § 2, so that its property was subject to taxation by the city wherein located.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Purely Public Charity.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by the City of Houston against the Scottish Rite Benevolent Association. From decree for defendant, plaintiff appeals. Reversed, and rendered in conformity to answers by the Supreme Court to certified questions (230 S. W. 978).

J. C. Hutcheson, Jr., of Houston, for appellant.

Baldwin & Baldwin, of Houston, for appellee.

LANE, J. This is a suit brought by the city of Houston against the Scottish Rite Benevolent Association, a corporation, hereinafter called Association, to recover taxes alleged to be due by said Association to said city on a building situated in Houston, known as its Cathedral, and for a foreclosure of the statutory tax lien on said property.

The cause was submitted to the court un-

der an agreed statement of the matters in controversy and of the facts applicable to matters in issue, as provided for by article 1949 of the Revised Statutes of Texas.

The agreed statement of the matters and statement of the facts applicable to the matters at issue, as certified by the trial court, is as follows:

"On the trial of the above-entitled and numbered cause the same is, and shall hereby be, submitted upon the agreed statement of facts hereinafter set forth, which said statement constitutes all the facts presented at the trial, and that the sole and only question to be determined by the trial court, as well as the Court of Civil Appeals and the Supreme Court in the event of an appeal, is as to whether or not, under the agreed statement of facts, the defendant, the Scottish Rite Benevolent Association of Houston, Texas, is liable to the payment of taxes, under the Constitution and laws of the state of Texas, or is said property exempt from taxation. If exempt, then judgment shall be rendered for the defendants. If not exempt, then judgment to be rendered for the plaintiff for the sum of $378.11, which amount is the taxes, interest, penalties, and costs for the years 1908, 1909, 1910, 1911, and 1912, and for foreclosure for plaintiff's tax lien on the property described in paragraph 4 of this agreement, against both defendants the Magnolia Camp, No. 13, W. O. W., being made a party defendant because it is the present owner of the property.

"Agreed Statement of Facts.

"That on the 20th day of March, 1903, the state of Texas issued to the defendant the following charter:

" 'State of Texas, County of Harris.

" 'Know all men by these presents, that the members of the Ancient and Accepted Scottish Rite of Freemasonry, of the city of Houston, county of Harris, and state of Texas, are desirous of becoming a body corporate.

" '(1) The name of said corporation shall be "the Scottish Rite Benevolent Association, of Houston, Texas."

" '(2) The purpose for which said corporation is formed is to provide for the relief of needy Masons, their wives, widows, mothers, and children, with the right to own, sell, or mortgage real estate for the use for said corporation, and to sue and be sued by its corporate name.

" '(3) This corporation shall have its place of business in the city of Houston, county of Harris, state of Texas.

" '(4) That the term for which corporation shall exist shall be fifty years.

" '(5) That said corporation has neither capital stock nor assets.

" '(6) The trustees of said corporation shall be five in number, and for the first year the following named persons shall be trustees: W. S. Hoskins, Max Taub, J. S. Wilson, J. C. Baldwin, and A. J. Schureman, who each and all reside in the city of Houston, in Harris county, Texas.'

"II. The above charter was duly signed, acknowledged, filed, and accepted in the Secretary of State's office, and issued as required by law.

"III. That the members of the 'Ancient and Accepted Scottish Rite of Freemasonry of the City of Houston,' referred to in the charter, include all members of the San Jacinto Lodge of Perfection, No. 6, and Houston Chapter Rose Croix, No. 3.

"IV. The corporation during the years above mentioned was the owner of lot 8 and 25x25 feet off lot 11, and 25x25 feet off lot 12, and adjoining lot 8, and facing 50 feet on La Branch street, and running back 125 feet parallel with Rusk avenue, being in the city of Houston, on S. S. B. B., Harris county, Texas, together with the improvements thereon, which consist in what is termed and styled the 'Scottish Rite Cathedral,' this being the only improvements on said property, and being a lodgeroom for the members of said association. The lot and the building situated thereon are actually used exclusively by members of the association, and no part of the same is rented or used by any other person or institution. That the association owns no property used with a view of profit. That it has no capital stock and declares no dividends.

"V. The regular meetings of San Jacinto Lodge of Perfection, No. 6, are held in said lodgeroom on the fourth Thursday of each month, and of the Houston Chapter of Rose Croix, No. 5, on the first Friday of each month. There are often held called meetings of the lodges. Each member pays annual dues of $2.50, while persons applying for and taking degrees pay to the order $50. The sums derived from these sources, as well as from all other sources, over and above the current necessary running expenses, are used for the purpose, and for no other purpose, except as shown in paragraph 7 hereof, than the relief of needy Masons, their wives, widows, mothers, and children; this relief not being confined to members of this local association, but to any and all needy Masons, their wives, widows, mothers, and children, when they are not able to provide for themselves. There are no salaried or paid officers. There is no rule in the ritual or by-laws relative to what disposition shall be made of its funds. The only reference thereto is found in the charter to the association.

"VI. The funds of the Scottish Rite Benevolent Association are voted to it by the San Jacinto Lodge of Perfection, No. 6, and the Rose Croix Chapter, No. 5. These two organizations are Scottish Rite Masonic Lodges, the membership consisting of Masons who have attained the 14th and 18th degree. The funds of these two bodies are derived from fees of initiation and dues of members. The fees of initiation are $22.50 for the Lodge of Perfection, and $25.00 for the Rose Croix Chapter, making a total of $47.50. Dues of $2.50 per year for both bodies. In addition to these funds, at each stated meeting of the Lodge of Perfection and Rose Croix the Box of Fraternal Assistance is passed, with the admonition to contribute to the relief of the poor and distressed such sum as the member is accustomed to spend needlessly each day. This fund derived from the Box of Fraternal Assistance is delivered into the hands of the almoner, who disposes of it to whomsoever may need it, irrespective of affiliation or condition, such as may appeal to him; no report being made of the funds to either to-day.

"The funds secured from these two bodies

have been invested in a home for those bodies to enable them to pursue their work as Masonic lodges, and at stated times, and when brought before the bodies, some of the money is appropriated for various charitable purposes; these charities being dispensed to persons whether or not they are Masons, the word 'Mason' including all members of Masonic families and dependents. There is no revenue received by the association, except some contributions from the two Masonic lodges named above. The officers draw no salaries.

"VII. This institution is conducted for the benefit of the Masonic order. All the money received from the two Masonic lodges mentioned is used for the members' benefit, except amounts voted to charities on motion made by some brother. The charities for which money is voted are not required by the rules or by-laws of the order to be institutions which are connected with Masonic orders. There is no provision in the rules or by-laws that requires how the money shall be spent, except the purpose being to provide for the organization, so that they may have a home at which they can meet at the least possible expense, in order to carry out the purposes of fraternal unity. The prime object is that the funds are to be expended for the relief of families of needy Masons or for founding or supporting homes or institutions for Masons. The larger portion of the money has been given to needy individuals; $500 being spent during the Galveston flood, and contributions have been made to the Harris County School for Girls, the Industrial Home for Girls, and several other organizations. The order is not one that does nothing but dispense charity, but it does dispense charity. The main purpose of the order is to provide a lodge and place of meeting, and to look after and provide for individual Masons and their families. The almoner is not given any instructions requiring him to confine the donations to the family of Masons, or to give them preference in the distribution of the fund, and the contributions of the almoner constitutes a real, substantial contribution, so that he always has money for distribution."

Upon said agreed case the trial court rendered judgment for the Association, declaring that its said property was exempt from taxation, and, upon the request therefor by the city of Houston, the trial judge filed his findings of fact hereinbefore set out, and also his conclusions of law, as follows:

(1) "I find from the above facts the defendant is a purely public charity, and therefore exempt under the Constitution and the laws of the state of Texas and the charter of the city of Houston."

(2) "I therefore find that judgment shall be rendered upon said agreed facts for the defendant, and it has been so ordered."

The appellant, city of Houston, assigns but one error, which is as follows:

"It appearing from the agreed case that the plaintiff is a corporation, organized for the purpose, as stated in its charter, to provide for the relief of needy Masons, their wives, widows, mothers, and children, with the right to own, sell, or mortgage real estate for the use of said corporation, and it further appearing from the statement of facts that sums derived from the annual dues are used for the purpose of the relief of needy Masons, their wives, widows, mothers, and children, and that the institution is conducted for the benefit of the Masonic order, the mere fact that certain incidental charities are distributed to others than Masons does not make this institution one of 'purely public charity,' but, on the contrary, the same is an institution whose beneficiaries are limited to special and particular persons or classes, so that the property of such institution is not exempt under the Constitution."

We think it may be stated that the only question in controversy is, is the appellee Association, as conducted, an "institution of purely public charity," as that term is used in article 8, § 2, of our Constitution? If it is such an institution, its property used for "purely public charity" is exempt from taxation. But if it is not so used, it is not exempt. It follows, then, that the main important and controlling inquiry is, what class of institutions and property did the framers of our Constitution intend to include within the phrase "purely public charity"?

It is provided by article 8, § 2, of our Constitution, that institutions of "purely public charity" may be by the Legislature exempted from the payment of taxes; and, further, that all laws exempting property from taxation, other than the property mentioned in said article, shall be void. In defining the term "institutions of purely public charity," as such term is used in our Constitution, the state Legislature by section 6 of article 7507 of the Revised Statutes of 1911 used this language:

"An institution of purely public charity under this act is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provides homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

It is admitted by appellant, city of Houston, that the legislative act above quoted exempts the property of such associations as appellee when the same is used in the manner in which appellee uses its cathedral. But it is insisted that such act violates article 8, § 2, of the Constitution, mentioned, and is therefore void. We think it must be, and is, conceded that if section 6 of article 7507, supra, is constitutional, then the property of said association, under the agreed facts, is exempt from taxation, and that the judgment of the trial court should be affirmed. Hence it follows that the only question for our decision is, is said legislative act constitutional or does it violate the Constitution?

From an examination of authorities we conclude that, when words and phrases used in the Constitution are of doubtful meaning, it is within the power of the Legislature to give such words and phrases such reasonable interpretation as in its opinion will meet the intention of the framers of the Constitution in the use of such words and phrases, and such interpretation is entitled to the highest respect of the courts, and they should accept the interpretation so made, unless it is made clearly to appear that the same has no reasonable basis, and is clearly erroneous. The Texas Co. v. Stephens, 100 Tex. 640, 103 S. W. 481; Township v. Talcott, 19 Wall. 666–669, 22 L. Ed. 232; State ex rel. Road Dist. v. Burton, 266 Mo. 711, 182 S. W. 749; 8 Cyc. 737.

In the case of Texas Co. v. Stephens, supra, it is said:

It is within "the power in the Legislature to classify subjects" of taxation; and "the courts * * * can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified."

In Township v. Talcott, supra, it is said:

"It is an axiom in American jurisprudence that a statute is not to be pronounced void upon the ground [that it is unconstitutional] unless the repugnancy to the Constitution be clear, and the conclusion that it exists inevitable. Every doubt is to be resolved in support of the enactment. The particular clause of the Constitution must be specified, and the act admit of no reasonable construction in harmony with its meaning. The judicial function involving such a result is one of delicacy, and to be exercised always with caution. Twitchell v. Blodgett, 12 Mich. 127; Tyler v. People, 8 Mich. 320; People v. Hahny, 13 Mich. 482."

In State ex rel. Road Dist. v. Burton, supra, it is said:

"Broadly stated, therefore, the Legislature may enact any law which does not contravene the federal or state Constitution, and in its interpretation the courts will hold it valid unless its unconstitutionality is manifest, and exists beyond a reasonable doubt."

In 8 Cyc. 737, it is said:

"Practical construction of constitutional provisions by the legislative department, in the enactment of laws, necessarily has great weight with the judiciary, and is sometimes followed by the latter when clearly erroneous. But this is a matter of policy only, for it is emphatically the province of the judiciary to construe the Constitution; and, where the judicial and the legislative construction of a constitutional provision conflict, the judicial construction prevails. If the meaning of such provision is clear and unambiguous, legislative construction thereof is entitled to no weight; but, if the meaning is doubtful, a practical construction thereof by the Legislature will be followed by the courts if it can be done without doing violence to the fair meaning of the words used, in order to sustain the constitutionality of a statute."

What has been said presents the further question: Is the phrase "purely public charity," as used in the Constitution, of doubtful meaning? It seems that it is. The authorities are conflicting as to what is meant by institutions of "purely public charity." In a very able and exhaustive opinion the Kentucky Court of Appeals, in the case of Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386, 103 S. W. 354, 16 L. R. A. (N. S.) 829, held:

"That the benefits of a home for the support of widows and orphans are confined to those members of a particular secret society does not deprive it of the character of a purely public charity within the meaning of a constitutional tax exemption."

The authorities cited by appellant in support of its contention are reviewed and repudiated by the opinion in the case last cited.

In 16 L. R. A. (N. S.) at pages 837 to 851, the author has digested the authorities upon the issue or question here presented pro and con, from which it is evidently true that the courts seem to be in irreconcilable conflict as to the meaning of the term "purely public charity" as used in the Constitutions and laws of the different states.

In the case last cited the court said:

"It may be admitted at the outset that the expression 'purely public charity' is one which has not been uniformly defined by the courts before which it has come for construction, either in our own Constitution or under the Constitutions of states having the same provision with reference to exemption from taxation as our own."

"A house for deaconesses of the Methodist Episcopal Church, used as a residence for women who serve without compensation in receiving, storing, and distributing food, clothing, and money to the needy poor, gratuitously instructing children, and who maintain a public library and refectory to furnish meals to working girls for less than cost, and who conduct daily public worship, nonsectarian in character, is a purely public charity, and as such entitled to exemption from taxation. Woman's Home Missionary Society v. Taylor, 173 Pa. 456, 34 Atl. 42. * * *

"A corporation chartered to control orphans and destitute children of a particular religious denomination and such others as the managers shall receive for the purpose of supporting and educating them, and exempted by its charter from taxation, is also exempt under a constitutional provision granting exemption to institutions of purely public charity and educational institutions not employed for gain. Norton v. Louisville, 118 Ky. 836, 82 S. W. 621.

"The property of an asylum created by virtue of and endowed by a testamentary devise and bequest to maintain and educate white female orphan children, first, who have been baptized in the Protestant Episcopal Church in a particular city; and, second, the same class of children in the state; and, third, the orphans of clergymen of that denomination generally, with denominational restrictions upon the form of

worship and instruction afforded the inmates—is nevertheless an institution of purely public charity, and as such exempt from taxation. Burd Orphan Asylum v. School Dist., 90 Pa. 21."

From the authorities cited we think it clear that the term "purely public charity," as used in our Constitution, is of doubtful meaning, and that our Legislature had the power to define such term as it did do by section 6 of article 7507 of our Revised Statutes, and under such circumstances the statutory definition should be followed by the courts.

We are unwilling, unless compelled so to do, to hold that the framers of our Constitution intended, by the article and section of the Constitution under discussion, to prohibit the Legislature from exempting from taxation the properties belonging to, and used by, such institutions as the defendant association, the orphan homes established and maintained by the Odd Fellows, Knights of Pythias, and kindred organizations, for the sole purpose of maintaining such institutions, on the theory that such institutions are not public institutions. We are not disposed to follow that line of decisions of other states which, in effect, would require that tax collectors of the state and incorporated cities take a portion of the limited funds so generously contributed to these charitable institutions by kind-hearted people for the sole purpose of taking care of the orphans, widows, and indigent and helpless members of the Odd Fellows, Knights of Pythias, Masonic organizations, and other kindred organizations, on the theory that they are not public institutions. That such institutions are purely charitable institutions is not questioned, but it is insisted that under technical definitions they are not purely public institutions. We find nothing in our Constitution that demands the conclusion that it intended to prohibit the Legislature from exempting the property used by such institutions exclusively for charitable purposes from taxation. We therefore prefer to follow that line of decisions which hold that such property may be exempted from taxation.

The appellee association is one of the many charities doing work of the public without the aid of public funds, but doing it more tenderly, and more thoroughly, than it would be done in charitable institutions supported by taxation. Such institutions not only provide food, clothing, and necessary medical attention to their inmates, but they go further; they seek to assuage the sorrows and cheer the last days of those to whom they minister, and surround them with the comforts of well-appointed homes. For these added liberties some courts of some of the states have declared them to be private charities, and compelled them to take part of the gifts of benevolence from those they were

intended to benefit, and use it to pay taxes upon property actually dedicated to public good and use. The position taken by the appellant, city of Houston, in its contention for the taxation of such charities, is, it seems to us, ungracious. In our opinion, nothing marks the advancement of the age in which we live so much as the growth of organized charity, and the increased care for the unfortunate and helpless. We regard further comment upon this subject unnecessary.

In view of the great conflict in the decisions of the various states on the question under discussion, and in view of the definition given to the term "purely public charity" by our Legislature, we feel constrained to accept such definition, and to hold that, under the agreed facts of this case, the property in question is exempt from taxation.

We find no error in the judgment of the trial court; therefore the same is affirmed.

Affirmed.

### On Motion for Rehearing.

At a former term of this court we held that, under the facts agreed to by the parties, the properties of the appellee, Scottish Rite Benevolent Association, were exempt under the Constitution and laws of Texas from taxation, and affirmed the judgment of the trial court.

Pending motion for rehearing by appellant, we certified to the Supreme Court the sole question presented by the appeal to this court, viz.: "Is the property of the Scottish Rite Benevolent Association, as above mentioned, subject to taxation by the city of Houston, or is it exempt from such taxation under the Constitution and laws of this state?"

The Supreme Court answered, in effect, that under the agreed facts the property in question was not exempt from taxation by the city of Houston; that to exempt it from taxation would be in violation of section 2, article 8, of the Constitution. It follows, therefore, that such property was subject to taxation by the city of Houston.

The answer of the Supreme Court requires at our hands the granting of the motion for rehearing, the setting aside of our former judgment, the reversal of the judgment of the trial court, and a rendition of judgment here for appellant for the sum of $378.11, this being the amount agreed upon by the parties as the sum due for taxes, interest, penalties, and costs for the years 1908, 1909, 1910, 1911, and 1912, and also for a judgment of foreclosure of plaintiff's tax lien on the property described in paragraph 4 of the agreement of the parties against both defendants, the Magnolia Camp No. 13, W. O. W., and the Scottish Rite Benevolent Association. It is therefore ordered that the judgment of this court heretofore rendered affirming the judgment of the trial court be set aside, and that the judgment of the trial

court be reversed, and that judgment be here rendered for the appellant, city of Houston, for the sum of $378.11, as agreed upon by the parties, together with 6 per cent. per annum interest thereon from the 27th day of October, 1915, until paid, and that appellant, city of Houston, have a foreclosure of its tax lien upon said property against both of said defendants.

Reversed and rendered.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes