SLOAN *v*. THE STATE.

May Term, 1847.

Indictment in the *Wayne* Circuit Court for retailing spirituous liquors on the 1st of *September*, 1844, without license. *Held*, that the circumstance that the sale was made in the city of *Richmond*, in *Wayne* county, was no defence. The charter of a municipal corporation, as of a city, &c., may be amended at any time by the legislature.

SLOAN
v.
THE STATE.

ERROR to the *Wayne* Circuit Court.

Wednesday,
May 26.

SMITH, J. — *Sloan*, the plaintiff in error, was indicted in the *Wayne* Circuit Court for selling spirituous liquors without license. The case was submitted for trial upon an agreed statement of the facts, and judgment rendered in favour of the state. The error assigned is, that the judgment should have been for the defendant.

| 8b | 361 |
| 130 | 437 |

| 8b | 361 |
| f169 | 15 |
| 169 | 16 |

The defence set up by *Sloan* was, that by the act of 1840 incorporating the city of *Richmond*, in *Wayne* county, the exclusive power to license retailers of spirits was given to the city; and that if he had violated any law, it was the ordinance of that city, and not the general law of the state upon which the indictment was founded.

The last clause of the 30th section of the act incorporating the city, provides that the common-council of said city "shall have the *exclusive right*, any law or custom to the contrary notwithstanding, to fix the rates of all licenses to retailers of spirituous liquors, at such sum as they deem best for the interest of said city, and shall moreover have power to refuse the vending of spirituous liquors altogether, if such be thought advisable for the welfare of the same." The 44th section gives the common-council authority to pass all rules, ordinances, and by-laws necessary to carry into effect the powers granted, and to impose penalties for the violation of the same, not exceeding 100 dollars for any one offence, to be recovered by an action of debt, &c.

Pursuant to these provisions of the charter an ordinance was passed, "that if any person or persons shall sell spirituous liquors in less quantities than one quart within the limits of said city, except for the use of the sick, without license from the city authorities, he or they shall, on conviction, be fined in any sum not less than one nor more than five dollars for each offence." This ordinance was in force at

VOL. VIII. — 46

May Term, 1847.

SLOAN
v.
THE STATE.

the time the offence was alleged to have been committed, and when the indictment was found.

It is contended by the counsel for the plaintiff in error, that, by the foregoing provisions of the act of incorporation, exclusive power was given to the city authorities to grant licenses, fix the rates thereof, and punish all persons for selling spirituous liquors without license; and that this exclusive power granted to the city, necessarily implies a restriction of the exercise of any authority in such cases by any other department of the state.

It is further urged that if there is any doubt as to the proper construction of the words used in the charter, conferring this "exclusive right," there is sufficient proof to show that it was the intention of the legislature to give to the city authorities the sole and exclusive power to grant such licenses, and to regulate or prohibit the sale of spirituous liquors as they might deem most conducive to the interest of their corporation. With the object, we presume, to show this alleged intention of the legislature, and to give the defendant the benefit of all the advantages which can arise from this view of the case, an agreement, signed by the counsel of both parties, has been filed in the cause, admitting the existence of certain facts which are not stated in the record. This agreement shows, that no person has taken out a county license to retail spirituous liquors, within the corporation of *Richmond*, since the adoption of the present charter, because it was supposed the exclusive jurisdiction of the business of retailing such liquors was thereby conferred upon the city; that no indictments have been found for retailing without license, since the charter was granted, before the one now under consideration; that the former charter of the city required a license from both city and county; that there are a large number of indictments found at the last term of the *Wayne* Circuit Court awaiting the decision of the present case; and that the city, by ordinance, fixed the rate of license at fifteen dollars. It is further agreed that all of these facts, which would have been legally admissible as proof on the trial below, shall be considered as proved for the purposes of the present decision of the case. As it appears to be one of considerable importance to the

rights and interests of the city corporation, we have deemed it proper to state these matters as having been urged upon our consideration.

On the part of the state it is insisted, that the city of *Richmond* possesses no other powers, under its charter, to regulate the sale of spirituous liquors, than it has in any other matters relating to the police of the city; that it has the right to prohibit entirely the sale of such liquors, but has no right to allow them to be retailed without license; and that the fixing the rates and granting a license by the city excuses from liability to the city ordinances, but cannot excuse from liability to the penal laws of the state.

We think this last position is the correct one. The grant of a right to the common-council of a city, to fix the rate of all licenses for retailing liquors, &c., must be construed to mean for city purposes only. Corporate powers are granted for the benefit of the corporators. They afford additional privileges and impose additional obligations, but do not exempt such corporators from any of their obligations as citizens of the county and state in which the corporation is situated. As inhabitants of incorporated cities or towns, they may be taxed for city or town purposes, but they are not thereby relieved from the necessity of contributing their proportion of the public charges in their capacity as citizens of the state at large. We do not mean to say that the legislature cannot release them for the time being from such obligations, but such a release must be in express terms, and cannot be implied from similar obligations imposed upon them in their corporate capacity.

It is contended that the word "exclusive," in the connexion in which it is used in the charter, implies an express release to the corporators from all liability to the state laws relative to licenses; but we do not think it will fairly bear that signification. It is not very clear to what other powers it refers. It may have been the intention to grant this exclusive power to the council as against other co-ordinate city authorities, or to secure to the city, as a matter of police regulation, the right to fix the rates of such licenses for city purposes independently of the action of the legislature. Upon either of these suppositions, the grant may be in-

terpreted according to the sensible meaning of the words used, without raising any implication that it was the intention to exempt persons, living within the bounds of the corporation, from the operation of the general license laws of the state.

But there is another question which may aid us in coming to a correct conclusion in the present case. It is alleged in the indictment that the offence was committed on the 1st day of *September*, 1844. Were the provisions of the charter above referred to then in force, or had they been repealed or modified by subsequent legislation? Public or municipal corporations are established for the local government of towns or particular districts. The special powers conferred upon them are not vested rights as against the state, but being wholly political exist only during the will of the general legislature, otherwise there would be numberless petty governments existing within the state and forming a part of it, but independent of the control of the sovereign power. Such powers may at any time be repealed or abrogated by the legislature, either by a general law operating upon the whole state, or by a special act altering the powers of the corporation. In the case of *The People* v. *Morris*, 13 Wend. 325, it was held that a general act of the legislature, providing for the licensing of grocers to sell spirituous liquors, had the same operation within the bounds of incorporated cities and towns, unless such cities or towns were expressly exempted from its operation, that it had in the state at large; although the charters of such corporations had been granted previously to the passage of the general act, and conferred the power upon the corporate authorities to grant such licenses.

Applying these principles to the case under consideration, we find that the act incorporating the city of *Richmond*, which, the plaintiff in error contends, confers the exclusive power to license retailers of spirits upon the city authorities, was passed in the year 1840. By the 165th section of the 12th chapter of the Revised Statutes of 1843, it is provided that there shall be assessed and paid into the county treasury for county expenditures, for each license to vend or *retail* spirituous liquors, not less than ten nor more than two hun-

dred dollars; and by the 27th section of the 25th chapter, in the general act relative to the incorporation of towns, it is enacted, that "it shall not be lawful for any person or persons within the bounds of such corporation, [the preceding section refers to towns 'incorporated under this *or any other law of the state*,'] to retail by less quantities than one quart any spirituous liquors, foreign or domestic, or to keep what is commonly called a tippling house, unless such person or persons shall, *in addition* to a license obtained from the board of county commissioners, obtain a license from the constituted authorities of said town, who are hereby authorized to grant the same for any term not exceeding twelve months at one time, on the applicant paying into the treasury of the corporation a sum, at the discretion of the corporate authorities, of not less than twenty-five dollars," &c.

Whatever, then, may have been the force and effect of the act of 1840, giving the exclusive right to the common-council of *Richmond* to fix the rates of such licenses, it must give way to the subsequent enactments on the same subject, so far as it conflicts with them. It appears evident that the legislature, by the several acts consolidated and revised in the statutes of 1843, intended to require that licenses should be obtained both from the county boards and the town or city authorities in all cases; and no special exemptions having been made, the law must operate uniformly throughout the state.

PERKINS, J., having been concerned as counsel was absent.

*Per Curiam.*—The judgment is affirmed with costs.

*S. E. Perkins, J. Perry*, and *C. H. Test*, for the plaintiff.

*A. A. Hammond, J. B. Julian*, and *J. S. Newman*, for the state.