## PATON *v.* THE PEOPLE.

STATUTE INOPERATIVE. The thirteenth section of the act of 1861 (1 Sess. 71), concerning licenses, was never effectual for any purpose.

LICENSE, *general law not affected by charter of Black Hawk.* The act incorporating the city of Black Hawk, and conferring power upon the authorities

of that city to license the sale of spirituous liquors (3 Sess. 228), does not affect the act of 1861 (1 Sess. 69) as amended, which confers like power upon the board of county commissioners.

LICENSE *issued by city no defense to prosecution under general law.* In an indictment, under the act of 1861 concerning licenses, for selling spirituous liquors without license within the limits of the city of Black Hawk, a license issued under the charter and ordinances of that city cannot be shown in defense.

## *Appeal from District Court, Gilpin County.*

THE act of 1861, section 8 (1 Sess. 70), provides that the board of county commissioners may grant licenses to keep saloons, hotels, public houses or groceries upon conditions named, and section 12 defines a grocery to be a place where spirituous or vinous liquors are retailed by less quantities than one quart. Section 2 of the act of 1862 (2 Sess. 78) provides a penalty for carrying on the business named without such license. The act incorporating the city of Black Hawk (3 Sess. 233) contained, among other powers conferred on the city council, the following :

" SECTION 45. To license, restrain, regulate, prohibit and suppress tippling houses, gambling houses, bawdy houses and other disorderly houses, and the selling and giving away of any intoxicating or malt liquors by any person within the city, except by any person duly licensed."

The thirteenth section of the act of 1861 (1 Sess. 71) was repealed by the act of 1866 (5 Sess. 66), and is as follows :

" SECTION 13. The president and trustees of incorporated towns shall have the exclusive privilege of granting licenses to saloons or groceries within their incorporated limits, and all sums of money which may be received for licenses granted as aforesaid, shall be paid into the county treasury."

Mr. L. C. ROCKWELL and Mr. E. T. WELLS, for appellant.

Mr. HUGH BUTLER, for the people.

Mr. Justice GORSLINE dissented.

HALLETT, C. J.  Appellant was indicted in the district court of Gilpin county for selling spirituous liquors in quantities of less than one quart without license, in violation of the act of 1861 concerning licenses, as amended by the acts of 1862 and 1866.  It appears that the selling occurred in the city of Black Hawk, and, upon the trial in the court below, the matters charged in the indictment being admitted, the appellant sought to defend by showing that he held license to vend spirituous liquors, issued by the corporate authorities of that city.  This evidence was rejected, and the ruling of the court is assigned for error.

We agree with the counsel for both parties, that the thirteenth section of the act of 1861 was never effectual for any purpose in this territory.  Incorporated towns, having presidents and trustees, were never known to our laws, and that section was always insignificant.  A license is defined to be a right given by some competent authority to do an act, which, without such authority, would be illegal, and to license one to do an act is simply to remove the legal restraint operating upon him respecting that act.  By the act of 1861, the citizens of Gilpin county were placed under legal restraint in the matter of selling intoxicating liquors from which they could relieve themselves by obtaining license to sell from the board of commissioners of that county.  This inhibition rested upon the citizens of Black Hawk equally with other citizens of the county.  By the act of 1864, incorporating the city of Black Hawk, the corporate authorities of that city were invested with power to license, restrain, regulate, prohibit and suppress the selling and giving away of intoxicating and malt liquors within the city.  The city authorities were not required to execute this power in any particular manner, or at all.  They could suppress the sale of intoxicating drinks, or impose hard terms, or ignore the subject and leave the traffic open to all.  The corporation was invested with discretionary power over the subject, and we are told that this is not consistent with the provisions of the act of 1861.  We cannot adopt this view.  It is difficult to believe that the legislative assembly, by

conferring upon the city of Black Hawk power which might or might not be exerted by that city, intended to revoke the positive provisions of the act of 1861. If the act incorporating the city of Black Hawk displaced the act of 1861 as to that city, and the corporation should decline to exert its power, then the vending of intoxicating liquors would be open to all the turbulent and lawless not less than the order-loving, well-intentioned citizen. Again, the power to license is not declared to be exclusively vested in the city, and no reason is perceived why the restraint operating upon the citizen may not be removable in the discretion of two distinct bodies. If one can be restrained from selling intoxicating liquors until he shall obtain permission from the corporation of Black Hawk, he certainly may be additionally required to obtain permission from the county commissioners of Gilpin county. In another, and, perhaps, a broader view of this subject, we observe that the power to license the vending of merchandise is exercised mainly for the purpose of raising revenue. It is true that the granting of liquor licenses is made discretionary, doubtless with a view to enable the authorities to keep the traffic from bad hands, but, nevertheless, the payment of money is only required for revenue purposes. The granting license upon payment of a sum of money is one method of collecting taxes. License Tax Cases, 5 Wal. (U. S.) 463.

The act of 1861 enabled the county of Gilpin to collect certain revenue by licensing the sale of intoxicating drinks. By and by, in 1864, a new corporation was created within the county of Gilpin and called Black Hawk, to the existence of which revenue was necessary, and here again the power to license was conferred. The needs of the county of Gilpin were not diminished by erecting the city of Black Hawk, and we do not discover that the legislature intended to deprive the county of any of its revenue. The cases of *Sloan* v. *The State*, 8 Blackf. 361, and *Harrison* v. *The State*, 9 Mis. 526, support these views. The case of *Woodward* v. *Turnbull*, 3 Scam. 1, is in conflict with those last named, but *Gardner* v. *The People*, 20 Ill. 430, is distinguishable

from the case under consideration. In that case, the city of Monmouth had not exercised the licensing power, and it was decided that the accused was amenable to the general law.

The court say, that the act incorporating the city of Monmouth gives the city the exclusive right to license the sale of spirituous liquors. Now, if the city had exclusive power to license the sale of spirituous liquors within the city, how could the county have any authority in the premises ? If the city alone had power to license, it seems to us that the county could not, nor could any other body take cognizance of the subject. Yet the court thought that the accused was amenable to the general law. Again, the court say that if the city authorities should grant license, the holder would be protected from the penalty of the general law. But why ? If the general law was operative within the city of Monmouth, would its operation be suspended by the action of the city authorities giving license pursuant to the charter and ordinances ? It seems to us that the act of the city authorities could in no way affect the operation of the general law, and that law, if enforcable at all within the city, should be enforced without regard to the action of the city authorities. But we agree with that court that the general law was not repealed by the city charter, and the judgment was reversed upon another ground.

The judgment of the district court is affirmed, with costs.

*Affirmed.*