Eichels *et al. v.* The Evansville Street Railway Company *et al.*

---

No. 8713.

EICHELS ET AL. *v.* THE EVANSVILLE STREET RAILWAY COMPANY ET AL.

STREET RAILWAY.—*City.*—*Legislative Grant.*—A grant of authority to lay and maintain street railway tracks upon the public streets of cities may be conferred by the Legislature, either in express words or by necessary implication.

SAME.—*Municipal Corporation.*—*Power.*—The ordinary and incidental powers of a municipal corporation are not broad enough to include the power to grant to a street railway company the right to lay tracks and conduct the business of transporting passengers upon and over the streets of the municipality.

CITY CHARTERS.—*Power of Legislature to Amend.*—The Legislature may, by general legislation, alter or amend the special charters of municipal corporations.

SAME.—*Intention.*—Where the intention of the Legislature is to apply the act to cities organized under special charters as well as those incorporated under general laws, that intention will govern, and the act will be deemed the law, not only of one class, but of all.

SAME.—*Statute Construed.*—The act of June 4th, 1861, 1 R. S. 1876, p. 754, granting the right to street railway companies to locate and maintain tracks upon the streets of cities, applies to cities organized under a special charter.

Eichels *et al. v.* The Evansville Street Railway Company *et al.*

STREET RAILWAY.—*Damage to Property Owners.*—A horse street railway may be placed and operated upon the streets of a municipal corporation without increasing the burden of the servitude, and the owner of the fee is not entitled to compensation because of such use of the streets upon which his property abuts.

From the Vanderburgh Circuit Court.

*C. Denby, A. Iglehart, W. F. Smith, D. B. Kumler* and *C. A. DeBruler,* for appellants.

*A. Gilchrist, V. Bisch* and *C. H. Butterfield,* for appellees.

ELLIOTT, C. J.—The questions which this record presents are thus stated by the appellants' counsel:

" 1. Can a municipal corporation, by ordinance, authorize street railway companies to incumber its streets by laying and maintaining railroad tracks therein without express authority therefor by the Legislature?

" 2. Has the corporation appellee obtained the necessary legislative sanction to authorize the laying down and maintenance of its track in the streets of the city of Evansville?

" 3. Can a street railway company, even with the proper legislative sanction, lay down and maintain its track in Second street, in the city of Evansville, without assessing and tendering damages to the abutting owners whose lots extend to the center of the street and upon which said track is laid?"

In an able argument, signally forcible and clear, counsel for the appellants maintain that these questions require a negative answer.

We concur, in the main, with the appellants upon the answer to the first question. In asserting that the grant of authority to lay tracks upon the public streets of a city must be expressly conferred, the counsel limit the rule more rigidly than the authorities warrant. Such an authority must, it is true, be conferred by statute, but it is not indispensably essential that the grant should be stated in express words. If it is conferred by necessary implication, it will be upheld and enforced. But the grant must be conferred either by express words or be necessarily implied. Without such a grant the

public streets can not be used by a railway corporation for the transportation of passengers for hire. The right to so use the streets is a franchise, and such a franchise as can only exist by force of a legislative grant. The power to grant franchises is a high legislative trust, and it is a grave question whether the Legislature can delegate it to municipal corporations. *People's Railroad* v. *Memphis Railroad*, 10 Wal. 38. We are not, however, called upon to decide whether the Legislature can delegate this power, but we are required to decide whether such a power is embraced within the ordinary and incidental powers usually conferred upon, or possessed by, municipal corporations.

The city of Evansville was organized, and is acting under, a special charter granted prior to the adoption of the constitution of 1852, and possesses the ordinary rights and powers of a municipal corporation. There is no provision in the original charter, nor in any of the various acts directly amending it, conferring power to grant to either steam or horse railway companies the right to use the streets of the city. The ordinary and incidental powers of a municipal corporation are not broad enough to include the power to grant to a railway company the right to lay tracks and conduct the business of transporting passengers upon and over the streets of the municipality. Such a power is an extraordinary one, and one which can not be implied from a charter of a municipal corporation which confers only the usual powers ordinarily bestowed upon such corporations. We are speaking now, not of the intersection and crossing of streets by railway tracks, laid down in building lines of road which run through the city, but of railways exclusively doing business in the city and occupying the streets for that purpose.

The charter of a municipal corporation may be amended or repealed at the pleasure of the Legislature. *Sloan* v. *The State,* 8 Blackf. 361 ; *The City of Indianapolis* v. *The Indianapolis Home, etc.,* 50 Ind. 215 ; *Lucas* v. *The Board, etc.,* 44 Ind. 524 ; 1 Dill. Munic. Corp., section 64. The power of the Legisla-

ture to alter or amend the charter of Evansville can not be, and, as we understand counsel, is not doubted. The question presented is, not whether the Legislature can alter or amend, but whether it has done so.

On the 4th day of June, 1861, an act was passed by the General Assembly entitled "An act to provide for the incorporation of street railroad companies," containing, among others, these provisions:

"Sec. 1. *Be it enacted by the General Assembly of the State of Indiana,* That any number of persons, not less than five, being subscribers to the stock of any contemplated street or horse railroad company, may be formed into a corporation for the purpose of constructing, owning, and maintaining street or horse railroads, switches or side tracks, upon or through the streets of the cities or towns within the State, by complying with the following requirements:     *     *     *

"Sec. 5. Such company may construct their track, switches, side tracks or turn-outs upon the streets of said cities or towns under the following conditions and restrictions:"     *     *

The contention of the appellants is, that this is a general law and can not apply to a city organized under a special charter, for the reason that such a charter can not be changed or altered except by a law directly amending or repealing the special charter. The question, then, which confronts us is this: Can the special charter of a municipal corporation be altered or amended by a general law?

Appellants refer us to the case of *Longworth's Ex'rs* v. *The Common Council of the City of Evansville,* 32 Ind. 322. Conceding that the doctrine of that case is sound, it can not affect the question here in hand. That case decides that a special charter may be amended by a special law. But that is not the question under discussion. We are not considering whether special legislation is valid in such cases, but whether an act, general in its terms, and with language broad enough to apply to all the cities of the State, howsoever incorporated, applies to and governs cities organized under special charters. Ref-

erence is also made to *The State* v. *Branin*, 3 Zab. 484. This case does decide that special charters to municipal corpo-. rations can not be destroyed by subsequent general enactments. We are unable to ascertain the ground upon which the court rested its decision, for there is neither argument nor authority adduced in support of the ruling. The proposition is, in our opinion, too broadly stated. If the Legislature can alter or amend at will, it must rest with it to determine the manner in which the amendment shall be made. If it has the power to enact both general and special laws, it is the exclusive judge of which is the proper method. It is for the courts to determine, not which is the proper method in cases where either may be adopted, but what is the purpose and effect of the statute adopted. We think the true rule is that stated by Judge DILLON, who says : " It is a principle of' very extensive operation that statutes of a general nature do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities; but they are so when this appears to have been the purpose of the Legislature. If both the general and the special acts can stand, they will be construed accordingly. If one must give way it will depend upon the supposed intention of the law-maker, to be collected from the entire legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in exclusion of the general enactment." 1 Dill. Munic. Corp., section 87. It is upon this general doctrine, that the case of *The City of Evansville* v. *Bayard*, 39 Ind. 450, proceeds. It was held in that case, that the act of 1867, relative to the assessment of shares of bank stock, superseded the provision upon that subject in the special charter of the city of Evansville. We are clear that the Legislature may, by general legislation, alter or amend the special charters of municipal corporations.

There is much more reason to doubt the power of the Legislature to amend special charters by special amendatory acts,. than there is for doubting its power to change or repeal

them by general legislation. Our constitution favors general legislation, and certainly, as to the creation of new corporations, forbids all special laws save only in the cases expressly named as exceptions. There are many very well considered cases holding that, under such a constitution as ours, special charters can not be amended; but this question is not presented, and we do not decide it. We do decide, however, that the special charter of a municipal corporation may be amended by general legislation. Where the intention is to apply the act to cities organized under special charters, as well as those incorporated under general laws, that intention will govern, and the act will be deemed the law, not only of one class of cities, but of all.

The language of the act of 1861 embraces all of the cities of the State. If there were any ambiguity in the language of the act, we should be bound to give it this effect, for it is very evident that the intention was that all of the cities of the State might, if the governing officers should so desire, receive the benefit of the law. In no other way than by a general law could any city, no matter how incorporated, obtain street railways, for it is very certain that under our constitution such corporations as street railways can only be created by general legislation.

We come now to the third and last question. It is the settled law of this State, that the public takes only an easement in the streets of a city, and that, if a steam railroad company lays its tracks upon the street, the owner of the fee is entitled to damages. *The Terre Haute, etc., R. R. Co.* v. *Scott,* 74 Ind. 29. It is contended that this principle applies to horse railroads. The very decided weight of authority is against appellants on this point. The question has received very full and very able consideration from courts and text-writers, and the difference between steam and horse railroads has been very clearly established. Appellants have cited only one case which sustains their contention, and in our search we have been able to find no other. The decision in *Craig* v. *Rochester City,*

*etc., R. R. Co.,* 39 N. Y. 404, was that of a divided court, three of its members dissenting from the prevailing opinion. The decisions of the same court in other cases contain doctrines which it is impossible to reconcile with that which prevailed in the case relied upon by the appellants. This is especially true of *Davis* v. *The Mayor, etc.,* 14 N. Y. 506, 530, and *The People* v. *Kerr,* 27 N. Y. 188. The doctrine of the principal case under mention has not found favor outside of New York. The text-writers declare a different doctrine. Judge DILLON says: "The author regards the appropriation of a street for a horse railway, constructed and used in the ordinary mode, to be such a use as falls within the purpose for which the streets are dedicated or acquired under the power of eminent domain. When authorized or regulated by the public authorities, this is a public use within the fair scope of the intention of the proprietor when he dedicates the street or is paid for property to be used as a street. Such proprietor must be taken to contemplate all improved and more convenient modes of use. There is solid ground to distinguish between horse railways in streets, as ordinarily laid and used, which do not exclude the public, and common railways, which are generally so constructed as altogether to exclude a portion of the street from public use in the accustomed modes." 2 Dill. Munic. Corp., 3d ed., sec. 722. Judge COOLEY recognizes the distinction between horse railroads and ordinary steam railroads, and expresses the opinion that the laying down of a steam railroad track does add a new burden, entitling the owner of the fee to compensation, but that laying and operating a horse railroad does not. We quote his language:

"Perhaps the true distinction in these cases is not to be found in the motive-power of the railway, or in the question whether the fee-simple or a mere easement was taken in the original appropriation, but depends upon the question whether the railway constitutes a thoroughfare, or, on the other hand, is a mere local convenience. When land is taken or dedicated

for a town street, it is unquestionably appropriated for all the ordinary purposes of a town street; not merely the purposes to which such streets were formerly applied, but those demanded by new improvements and new wants. Among these purposes is the use for carriages which run upon a grooved track; and the preparation of important streets in large cities for their use is not only a frequent necessity, which must be supposed to have been contemplated, but it is almost as much a matter of course as the grading and paving. The appropriation of a country highway for the purposes of a railway, on the other hand, is neither usual nor often important; and it can not with any justice be regarded as within the contemplation of the parties when the highway is first established. And if this is so, it is clear that the owner can not be considered as compensated for the new use at the time of the original appropriation." Cooley Const. Lim. 556.

The doctrine of the eminent jurists, from whose works we have quoted, is fully sustained by the adjudged cases. *Elliott* v. *Fair Haven, etc., R. R. Co.,* 32 Conn. 579; *Hinchman* v. *Paterson Horse R. R. Co.,* 17 N. J. Eq. 75; *Jersey City, etc., R. R. Co.* v. *Jersey City, etc., Horse R. R. Co.,* 20 N. J. Eq. 61; *Cincinnati, etc., Street R. W. Co.* v. *Cumminsville,* 14 Ohio St. 523; *Hobart* v. *Milwaukee City R. R. Co.,* 27 Wis. 194; S. C. 9 Am. R. 461; *Attorney General* v. *Metropolitan R. R. Co.,* 125 Mass. 515; *Brown* v. *Duplessis,* 14 La. An. 842; *Savannah and Thunderbolt R. R. Co.* v. *The Mayor, etc.,* 45 Ga. 602; *Peddicord* v. *Baltimore, etc., R. W. Co.,* 34 Md. 463.

In the recent case of *Hiss* v. *Baltimore, etc., R. W. Co.,* 52 Md. 242 (S. C. 36 Am. Rep. 371), express and full approval is given to the doctrine maintained by Judge DILLON and by Judge COOLEY. The Supreme Court of Iowa has very recently given this general subject a thorough consideration in the case of *Stanley* v. *The City of Davenport,* 54 Iowa, 463, and it was there held that a municipal corporation had no authority to grant a right to a street railway to use steam as the motor power, but it was conceded that ordinary horse rail-

ways might be operated upon the streets without imposing an additional burden upon the owner of the fee.

The question has been so fully discussed in the cases and text-books to which we have referred that nothing of importance or of interest can be added. The rule sustained both by principle and authority is, that a horse railway may be placed and operated upon the streets of a municipal corporation without increasing the burden of the servitude, and that the owner of the fee is not entitled to compensation because of such use of the streets upon which his property abuts.

Judgment affirmed.