[No. 7109.]

## Godfrey v. County Commissioners of the County of El Paso.

1. Statutes—*Construed*—A statute prohibited the carrying on ot certain callings without a license from the county commissioners. No mention was made therein of theaters, circuses, menageries or the like. (Laws 1861, 69. Rev. Stat. c. LXXXIII). A later statute, not expressly amending the former, imposed a fine upon any person who, without a license, should assume to carry on a business for which a license is required "by any law of this territory." This was followed by a provision in these words, "This act shall extend to theaters, circuses and shows where an admission fee is charged" (Laws 1862, 79, Rev. Stat. sec. 4000).

*Held*, that the county was authorized thereby to exact a license fee, though no statute prescribed the fee or rate to be charged for such an exhibition.

2. ——*Repeal by Implication*—A statute authorizing the public authorities of cities and towns to "license, tax, regulate, suppress and prohibit theatrical and others shows" (Rev. Stat. sec. 6525 c. 13), does not confer an exclusive power, nor take away the authority to license and tax such exhibitions, granted to the authorities of the county by previous statute.

*Error to El Paso District Court.*—Hon. J. W. Sheafor, Judge.

Messrs. McCorkle & McCorkle, for plaintiff in error.

Mr. Willis L. Strachan, for defendant in error.

Mr. Justice Hill, delivered the opinion of the court:

This action is submitted upon an agreed statement of facts. The practice is commendable. The question involved is whether the Barnum and Bailey shows (after having paid a city license to the city of Colorado Springs, pursuant to its ordinance authorizing said Barnum and Bailey shows to exhibit its menagerie and circus within the city limits of the city of Colorado Springs) can, under the laws of this state, be compelled to procure and pay $100 for a county license for the same purpose. Such payment was demanded by the board

of county commissioners. It was paid under protest, under an agreement with the board that it was to be subject to a decision of the district court as to whether the county, under the circumstances, could require plaintiff to take out and pay for such a license. This suit was brought to recover the $100 so paid. The judgment was in favor of the board. The plaintiff brings the case here for review upon error.

General section 4000 Revised Statutes, 1908, was added to chapter 83 of the county license act in 1862, it reads in part as follows, "This chapter shall extend to and include all theatres, circuses and shows, where an admission fee is charged for entrance thereto." There has never been any direct repeal of this section and unless this power has been taken away from the county by necessary implication by some later act, its provisions are still in force. The plaintiff in error concedes this; but contends that sub-division 13 of the general section 6525, Revised Statutes, 1908, enacted in 1877, by necessary implication repealed general section 4000, Revised Statutes, 1908, in so far as it applies to territory situate within incorporated cities and towns. General section 6525, *supra*, pertains to powers of city councils and boards of trustees in incorporated cities and towns. Sub-division 13 reads, "To license, tax, regulate, suppress and prohibit hucksters, peddlers, pawn-brokers, keepers of ordinaries, theatrical and other exhibitions, shows and amusements, and to revoke such license at pleasure." We find nothing in this sub-division, which, to our minds, shows any intention to take away from the county its power, or to grant unto cities and towns the exclusive power to license shows and amusements within their respective limits.

This same contention, by analogy, was passed upon by this court in the case of *Paton v. The People*, 1 Colo. 77, concerning the sale of intoxicating liquors in the incorporated city of Black Hawk. The act incorporating that city, among other powers, conferred on the city council the following, "Section 45. To license, restrain, regulate, prohibit and sup-

press   *   *   *   the selling and giving away of any intoxicating or malt liquors by any person within the city   *   *   *."

Section 8 of an act approved November 6th, 1861, to be found at page 70, General Laws of 1861 then in force, reads in part as follows:

"Sec. 8.   The board of county commissioners may grant licenses to keep saloons, hotels, public houses or groceries, upon the following conditions, to-wit: First, The applicant shall pay into the county treasury, for the privilege granted, a sum not exceeding three hundred dollars nor less than twenty-five dollars, in the discretion of the board.   Second, The applicant shall execute bond in the penalty of five hundred dollars, with one or more securities to be approved by the board, conditioned that the applicant will keep an orderly house, and that he will not permit any unlawful gaming or riotous conduct in his house."

It was contended in the above case, as it is here, that the act of 1864 incorporating the city of Black Hawk and granting to it certain privileges, including that of licensing saloons by implication, amended section 8 of the act of 1861 and took away from the county the right to enforce a license for such sale within the corporate limits of that city.   This contention was rejected, at page 80 the court said,

"The act of 1861 enabled the county of Gilpin to collect certain revenue by licensing the sale of intoxicating drinks. By and by, in 1864, a new corporation was created within the county of Gilpin and called Black Hawk, to the existence of which revenue was necessary, and here again the power to license was conferred.   The needs of the county of Gilpin were not diminished by erecting the city of Black Hawk, and we do not discover that the legislature intended to deprive the county of any of its revenue."

This rule of construction is applicable here.   The language of the original act conferring the power upon the county to enact a license for a sale of intoxicating liquors is quite similar to that used in the section conferring the power

to license shows within the county and we see no reason why the same construction should not be given to each. After the decision of this court in *Paton v. The People, supra*, the legislature saw fit, by the adoption of sub-division 18 of general section 4403, Vol. 2, Mills' Annotated Statutes (since amended) to grant unto cities and towns the exclusive right to license, regulate or prohibit the selling or giving away of any intoxicating malt, vinous, mixed or fermented liquors within the limits of the city or town. It was under this section that the case of *Hetzer v. The People*, 4 Colo. 45, and *Huffsmith v. The People*, 8 Colo. 175, were decided; but we find no subsequent changes pertaining to the county's authority to license shows and no attempt has since been made to grant unto cities and towns the exclusive right pertaining to the same, within their corporate limits. The ruling in the case of *Paton v. The People, supra*, is applicable here under the agreed state of facts.

Perceiving no prejudicial error the judgment is affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.