## The Trustees of the Village of Clintonville *vs.* Keeting.

The act incorporating the village of Clintonville, (*Stat.* 1845, *p.* 172,) authorized the trustees to make such by-laws as they should deem proper relative to " the regulating, restraining, and suppressing of all manner of shops and places for the sale of ardent spirits by retail," and to impose a fine of not more than $15 for the violation of such by-laws; and this power was by a subsequent act declared to be *exclusive* of the powers of the town officers of the towns in which the village was situated: *held* that a by-law imposing a fine of $15 for selling ardent spirits in a quantity less than five gallons, *without having a license from the trustees of the village*, was valid.

The provision authorizes the trustees to prohibit altogether the selling of spirituous liquors, even by persons having a license from the town authorities, or to limit the right to sell to such persons as shall obtain a license from themselves in addition to the town license; but it does not warrant the granting of a license by the trustees which shall of itself authorize the selling of such liquors; so that a retailer of ardent spirits in that village must, since the passing of the by-law, have a license from the town commissioners of excise, and in addition thereto, a license from the village trustees.

ERROR to Clinton C. P. The trustees of the village of Clintonville sued Keeting before a justice in March, 1845, and declared in debt, for several penalties of $15 each, for selling ardent spirits within the village in quantities less than five gallons at one time, contrary to an ordinance of the trustees of the village restraining the sale of ardent spirits by retail within the village. The village was incorporated in 1825; and by the 3d section of the act, the trustees were authorized " to make, ordain, constitute, and publish such prudential by-laws, rules, and regulations, as they from time to time shall deem meet and proper; and such in particular as shall relate" " to the public markets, inns and taverns in said village, and the number thereof; to the regulating, restraining, and suppressing of all manner of shops and places for the sale of ardent spirits by retail;" " and generally, such as may concern the good order and public welfare of the said village." The 4th section authorized the imposition of fines and forfeitures not exceeding $15, for transgressions of the by-laws. (*Stat.* 1825, *p.* 172, §§ 3, 4.) In 1844, the charter was amended; and the 4th section of that act was as follows: " The powers vested in the trustees of said village in respect to regulating, restraining and suppressing of all manner of shops and places for the sale of ardent spirits by retail, by virtue of the 3d section" of the act of 1825, " are hereby declared to be exclusive, within the limits of the said village, of the powers of the town officers of Au Sable and Chesterfield [the towns out of which the village was carved, § 1,] in respect to the licensing of inns, taverns, shops, and places for the sale of ardent spirits by retail." (*Stat.* 1844, *p.* 137, § 4.)

On the 8th of June, 1844, the trustees passed an ordinance

as follows : " *Section* 1. Be it ordained, &c. that no person or persons after this ordinance shall take effect, shall sell within the village of Clintonville any ardent spirits in any quantities less than five gallons at a time, without having a license therefor granted by the trustees of the village of Clintonville ; nor shall any person or persons use or keep within the said village after this ordinance shall take effect any manner of shop or place for the sale of ardent spirits by retail in any quantity less than five gallons at a time, without having a license therefor granted as herein directed.

*Section* 2. Whoever shall sell within the village of Clintonville, after this ordinance shall take effect, any ardent spirits in any quantity less than five gallons at a time, without having a license therefor granted as in the foregoing section of this ordinance directed, shall forfeit the sum of fifteen dollars for each and every such offence, to and for the use of the corporation of the village of Clintonville.

*Section* 3. Whoever shall use or keep within the said village any manner of shop or place for the sale of ardent spirits by retail in any quantity less than five gallons at a time, after this ordinance shall take effect, without having such license therefor as aforesaid, shall forfeit the sum of fifteen dollars for each and every offence, to be for the use of the said corporation.

*Section* 4. This ordinance shall take effect in two days after its passage."

It was proved that in January and February, 1845, the defendant kept a grocery in the village of Clintonville, where he sold ardent spirits by retail in quantities less than five gallons. The liquor was sometimes drank in the shop, and sometimes carried away by the purchaser. The justice gave judgment for the plaintiffs for a penalty of $15. On certiorari, the C. P. reversed the judgment. The plaintiffs bring error.

*G. A. Simmons,* for plaintiffs in error.

*L. Stetson,* for defendant in error.

The Trustees of Clintonville v. Keeting.

*By the Court*, BRONSON, Ch. J.  The territory included in the village of Clintonville constitutes a part of the towns of Au Sable and Chesterfield; and the inhabitants of the village continue subject to the town authorities in the town to which they respectively belong.  The powers conferred upon the village corporation are in addition to those which may be exercised by the towns; and do not, unless it be in the matter of granting licenses to sell spirituous liquors, abrogate any power which before belonged to the towns.  The village was incorporated in 1825; and by the third section of the act, the trustees have power to make " such prudential by-laws, rules and regulations as they, from time to time, shall deem meet and proper; and such in particular as shall relate" "to the public markets, inns, and taverns in said village, and the number thereof; to the regulating, restraining and suppressing of all manner of shops and places for the sale of ardent spirits by retail ;" and to various other subjects.  And by the fourth section, the trustees are authorized to impose fines and forfeitures for the breach of the by-laws, not exceeding fifteen dollars for any one offence. (*Stat.* 1825, *p.* 172.)  The power to grant licenses which should authorize the sale of spirituous liquors was no where given in terms; and it cannot be fairly inferred from the power to make by-laws.  Nor can it be inferred from the fourth section of the act of 1844, by which the powers vested in the trustees of the village by the third section of the charter are " declared to be exclusive, within the limits of the said village, of the powers of the town officers of Au Sable and Chesterfield in respect to the licensing of inns, taverns, shops and places for the sale of ardent spirits by retail." (*Stat.* 1844, *p.* 137.)  The section does not profess to make a new grant; but only to declare the powers already granted to the trustees to be exclusive of those which had been given to the town officers by the general excise law of 1830. (1 *R. S.* 678, *tit.* 9.)  Those officers had been authorized to license inns and other places for the sale of ardent spirits; and if the authority could be annulled, it could not be transferred to the trustees by a mere power, though exclu-

sive, to make by-laws, rules and regulations concerning such places.

It is not necessary to inquire what are the powers of the trustees in relation to inns and taverns; for no such question is made by this case. The defendant was not a tavern-keeper; but a rum grocer. With the exception of inns and taverns, if they constitute an exception, the trustees have power to make by-laws for "the regulating, restraining and suppressing of all manner of shops and places for the sale of ardent spirits by retail." The power is clearly broad enough to warrant the entire prohibition of any such shop or place within the limits of the village. And if the trustees may go to that extent, I see no reason why they may not stop short of it, and say, there shall be none, except such as we shall authorize or license to be kept. The word "license," as it is used in the ordinance of the trustees, does not mean an authority under the excise law to sell spirituous liquors; but an authority to sell notwithstanding the ordinance. The trustees did not attempt to raise revenue by granting licenses under the excise law; but only to protect the inhabitants of the village against the consequences of licenses which might be granted by the town authorities. As ardent spirits might sometimes be required for other purposes than that of producing intoxication, the general prohibition was qualified by reserving the right to grant licenses or permits to sell; which permits, it may be presumed, would either be restricted to sales for special and laudable purposes, or to persons who would not use the license for the purpose of making money at the expense of human happiness. But whether the power which the trustees reserved should be discreetly exercised or not, as they had the power to prohibit sales altogether, I cannot doubt that they might do it to a limited extent. (*Coates* v. *The Mayor of New-York,* 7 *Cowen,* 585.)

Upon the construction which I have given to the statute, if the trustees had forbidden sales, without any qualification, it would, in effect, have superseded the authority of the town officers to grant licenses to sell within the village. But as the by-law does not forbid sales when made under the license or

permission of the trustees, and as the trustees cannot grant licenses under the excise law, the town officers may still grant licenses within the village, which will have the effect of protecting the person licensed against the penalties inflicted by the excise law; but not against those imposed by the village ordinance. The person who sells ardent spirits in the village of Clintonville must have authority both from the town and the village officers. If he has no town license, he will be liable to the penalties of the excise law; and if he has no permit from the trustees, he must pay the penalty inflicted by the ordinance. If he has no license at all, he must pay both penalties.

If the powers granted to the trustees by the third section of the charter were taken away by the general excise law of 1830, (*Harrington* v. *Trustees of Rochester,* 10 *Wend.* 547; *The People* v. *Morris,* 13 *id.* 325,) they were fully restored by the act of 1844; or so far, at the least, as relates to "the regulating, restraining and suppressing of all manner of shops and places for the sale of ardent spirits by retail;" and they were declared "to be exclusive, within the limits of the said village, of the powers of the town officers." The legislature must have intended that the trustees should be at liberty to use their powers to the exclusion of, or notwithstanding the powers which had been given to the town officers.

The power is, to make by-laws for "the regulating, restraining and suppressing of all manner of shops and places for the sale of ardent spirits by retail." This amounts to an authority to forbid the sale; for if there is a sale, it must be made in some place. The by-law is in both forms; it forbids the sale; and also forbids the using or keeping of any manner of shop or place for the sale of ardent spirits by retail. No question was made on the trial in relation to the form of the declaration, which is for selling ardent spirits contrary to the ordinance.

The defendant showed no license of any kind. We think the judgment of the common pleas should be reversed, and that of the justice affirmed.

Ordered accordingly.