THE CITY OF INDIANAPOLIS *v.* THE INDIANAPOLIS HOME
FOR FRIENDLESS WOMEN.

CONSTITUTIONAL LAW.—*City.*—*Home for Friendless Women.*—The act approved
February 26th, 1873 (Acts 1873, p. 141), concerning the application of
certain fines, etc., collected in the enforcement of certain city ordinances
in cities having incorporated homes for friendless women, applying such
fines, etc., to the support of such institutions, is not unconstitutional.
SAME.—The Indianapolis Home for Friendless Women is so far a public
corporation, or institution, that an appropriation by the legislature of
certain fines, etc., collected for the violation of certain city ordinances, to
its support, is not the appropriation of money to a private purpose.

From the Marion Superior Court.

*C. Byfield* and *D. Howe,* for appellant.

*C. Baker, O. B. Hord,* and *A. W. Hendricks,* for appellee.

DOWNEY, J.—The appellee filed its complaint in the superior
court, representing that in 1868 it became, and has ever since
been, a corporation under the laws of the State of Indiana,
and having its domicile in the city of Indianapolis; that prior
to and at the time of the taking effect of the act of the General
Assembly of this State, approved February 26th, 1873, enti-
tled " an act concerning the application of certain fines, pen-
alties, and forfeitures collected in the enforcement of certain
city ordinances, in cities having therein incorporated homes
for friendless women," the institution had been incorporated,
and then was, and ever since has been, and still is, pursuing
the objects of its creation, in furnishing a home for friendless
women; that after the taking effect of the said act, the mayor
of said city paid into the city treasury the sum of three hun-
dred dollars, the same being the aggregate amount of all the
fines, penalties, and forfeitures contemplated by said act which
had been or were collected by the mayor or other judicial offi-
cer of said city during the period of three months from and
after the taking effect of said act; that said sum was assessed
and collected by said city as fines for the breach of the ordi-
nances of said city in relation to houses of prostitution, and in
relation to keepers, inmates, and frequenters thereof, and for

the breach of the ordinances of said city for the suppression of vice and immorality, and for the suppression of houses of ill-fame, and for the punishment of the keepers, frequenters, and inmates thereof, and for the breach of the ordinances of said city against professional gambling, and against the keepers of gaming and gambling houses, and the frequenters and inmates thereof. It is then alleged, that after the payment of said sum into the city treasury, and before the filing of this complaint, the trustees of said home for friendless women requested the common council of said city to make an order for the payment of said sum to said trustees for the use of the plaintiff, the collection and payment of said sum into the treasury having been duly reported by the mayor to said city council as required by the provisions of said act; but the common council refused to make such order, etc., and still refuse; wherefore, etc.

The act of the General Assembly in question is found in the Acts of 1873, pp. 141 and 142. By the first section it is provided, that in all incorporated cities of this State, where there is now or shall hereafter be established an incorporated home for friendless women, incorporated under the laws of this State, all fines and penalties assessed and collected by the mayor or other judicial officer of such city, for the breach of any ordinance of such city in relation to houses of prostitution, or in relation to the keepers, frequenters, or inmates thereof, or for the breach of any ordinance of such city for the suppression of vice or immorality, or for the suppression of houses of ill-fame, or for the punishment of the keepers, frequenters, or inmates thereof, when so collected, shall be paid over to the board of trustees of such home for friendless women in such city, to be applied to defraying the current expenses of such home.

By the second section, it is provided, that all fines and penalties assessed and collected for the breach of any ordinance against professional gambling, or against gaming or gambling of any kind, or against the keepers of gambling houses,

or the frequenters or inmates thereof, when so collected, shall be paid over and applied in the same way.

By the third section, the amounts of forfeited recognizances in prosecutions under such ordinances are required to be paid over and applied in a similar manner.

The fourth section requires the mayor or other officer collecting such fines to keep a separate account thereof, to pay the amount collected, at the end of every period of three months, into the city treasury for the use of such trustees of such home for friendless women, to make a detailed statement to the city council, etc.; and thereupon the common council is required to make an order for the payment of the same to such trustees for the purposes aforesaid; and the same shall be paid accordingly.

The fifth section requires such trustees to report annually to the city council the operations and business affairs of such home, with a statement of the receipts and expenditures thereof, etc.

The act was approved and went into force, in consequence of a declared emergency, on the 26th day of February, 1873.

A copy of the articles of association of the Home for Friendless Women is filed with the complaint, and from that it appears that the objects of the association are " to protect unprotected women, house the houseless, save the erring, and keep the tempted." The society consists of those persons who annually, or by life subscription, contribute to its treasury the sum of five dollars, and they have the right to vote for managers and trustees, the sum of one hundred dollars conferring the right to life membership. The care of the home, and the direct management of the affairs of the same, are devolved on a board of female managers of not less than thirteen. The ownership, protection, and improvement of the property, and all charge of its interests not committed to the managers are committed to a board of male trustees of not less than thirteen. It is made competent by the articles of association for the board of trustees, when suitable buildings or parts of buildings shall be procured or erected for the separate and con-

strained control of females apart from those who are cared for by the board of managers, to contract and agree with the city council, or with the commissioners of Marion county, for the custody and control, under requisite discipline by proper officers, for any and all females becoming subject to correction for any breaches of law for which they may be appropriately committed to penal confinement, and whose treatment may be beneficially subserved consistently with the objects of the society.

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action was filed by the defendant and overruled by the court. The defendant then filed several paragraphs of answer, to which demurrers were filed by the plaintiff, and sustained by the court.

The defendant declined to answer further, and judgment was rendered according to the prayer of the complaint, requiring the city to pay over the amount of money found in its hands arising from the fines, etc., aforesaid.

It may be remarked that another society, by the name of "The Society of the Good Shepherd," applied to the court for leave to become a party to the action, alleging that it was an incorporated charitable institution, in Indianapolis, since March, 1874, and during that time had furnished a home for friendless women, and claiming to participate in said moneys. This motion was overruled, but no question as to the ruling is made in this case.

An appeal was taken from the special to the general term of the superior court, where the judgment of the special term was affirmed.

The only question made and argued in this court is as to the constitutionality and validity of the act of the General Assembly applying the said fines, etc., to the support of the home for friendless women.

There is an act, passed and approved March 11th, 1867, 3 Ind. Stat. 562, which, on certain conditions, allows women and girls convicted of any crime or misdemeanor, or violation of any city ordinance, in any of the inferior or superior

courts of the State, or of any city therein, the punishment of which is imprisonment at hard labor or otherwise, in the discretion of the court and with the consent of the trustees, etc., of the home for friendless women, to be imprisoned in such institution. By the third section of the act, the institution is open to the inspection of certain state, county, and city officers, at all reasonable hours.

The first objection urged against the act of 1873, by the city attorney, is, that " it is unconstitutional, because it directly and materially impairs a power, the exercise of which is essential to the existence of existing municipalities."

The second ground of objection is, that " it is unconstitutional, because it imposes taxation upon the citizens of the city for private purposes."

And the third objection is thus stated :

"Assuming that the legislature has the same control over fines collected by the city that it has over fines collected by the State, still the act of 1873 is unconstitutional, because it appropriates public funds to the benefit of private corporations."

It must be conceded that, as the city is at the expense of maintaining a police force and a court in which the fines and forfeitures are assessed and collected, and as such fines, etc., are, when collected, paid into the city treasury, the amounts so collected and paid would seem to become the property of the city. And although this fund does not arise from direct taxation of the property, etc., of the city, it does, in reality, no doubt, cost the city much more in the expenses of its police, etc., than it would cost to raise the same amount by direct taxation. It is quite clear that, in substance, it makes no difference to the city whether this amount of money is taken out of the treasury as having been derived from fines, etc., or whether the same amount raised by taxation shall be taken out. In either case, that amount of money is taken from the funds of the city. If the city could not be required to raise the amount by taxation and pay the same over to the home for friendless women, it cannot, with any better reason, be

compelled to pay the amount from its treasury when derived from the fines, etc., assessed and collected.

The first objection made to the constitutionality of the law does not strike us very forcibly in the language in which it is stated. The use of the amount of money derived from the fines, etc., by the city, can hardly be essential to the existence of the corporation.

The second and third objections each present the same question. Counsel for the city insist that the home for friendless women is a private corporation, and that the appropriation of the fines, etc., to its support is an appropriation of the money to a private purpose. On the other hand, it is claimed by counsel for the appellee, that the home is a public or *quasi* public corporation, and the funds therefore devoted to a public purpose. We have come to the conclusion that the home for friendless women is so far a public corporation or institution that to appropriate the funds in question to its support is not the appropriation of money to a private purpose. There is no stock representing the capital of the institution. No one derives any pecuniary profit from it. It is a public charity, designed for the benefit of a class of unfortunate persons. It is recognized by the act of March 11th, 1867, as an institution which may, under certain conditions, be used by the city and county as a place for the imprisonment and reformation of females convicted of any crime or misdemeanor or violation of any city ordinance. And this use of the institution is provided for in the articles of association by which it is organized. The institution is made subject to the visitation and inspection of officers of the State and county, and of the city. It is thus, in some sense, recognized as a public institution or corporation.

In the case of *Lucas* v. *The Board, etc., Tippecanoe Co.*, 44 Ind. 524, we had occasion to examine the authorities on the subject of the power of the legislature over the funds, etc., of municipal corporations. We have examined the authorities referred to by counsel in the case under consideration, but do not deem it necessary to refer to them separately and particu-

larly. Although the question is not presented in this case, we may say that a serious doubt was expressed in consultation whether that part of the act of 1873, which relates to fines assessed " for the breach of any ordinance of such city for the suppression of vice or immorality," is not too indefinite to have any operation.

We think the court committed no error in holding that the act in question is not unconstitutional.

The judgment is affirmed, with costs.