# JANUARY TERM, 1884. 591

Richland County vs. The Village of Richland Center.

RICHLAND COUNTY VS. THE VILLAGE OF RICHLAND CENTER.

*February 1 — February 19, 1884.*

*(1, 2) Constitutional law: Disposition of license moneys: Vested rights of counties. (3) Cause of action: demand.*

1. The statute (sec. 16, ch. 35, R. S. 1858) which provided that in counties in which the county system of supporting the poor had been adopted. all moneys derived from licenses for the sale of intoxicating liquors should be paid into the county treasury semi-annually and be used in defraying the pauper expenses of the county, did not vest such a right in the county that the legislature could not afterwards provide for a different disposition of such moneys.

2. Ch. 156, Laws of 1883, making it optional with any town, city, or village, in counties having adopted the county system, to devote such license moneys to other purposes than the support of the poor, and legalizing the action already taken by the various municipal boards disposing of them in a different way, is not unconstitutional so far as it affects moneys which, though collected prior to the passage of the act, had not been paid over to or demanded by the county.

3. Until it had made a demand for the moneys so collected, the county could have no vested right of action therefor, even though, prior to the act of 1883, the authorities of the municipality in which they were collected had by resolution appropriated them to, and actually expended them for, general municipal purposes.

APPEAL from the Circuit Court for *Richland* County.

The parties agreed upon a case and submitted it to the circuit court pursuant to sec. 2788, R. S., for the purpose of determining the ownership of $560 derived from licenses for the sale of intoxicating liquors granted by the defendant village in 1882. The facts sufficiently appear from the opinion. From a judgment in favor of the plaintiff, the defendant appealed.

*J. H. Berryman,* for the appellant.

[The arguments urged and authorities cited in the able brief of the counsel for the appellant are so fully contained in the opinion of the court that it is not deemed essential to repeat them here.]

*Michael Murphy*, for the respondent:

Ch. 156, Laws of 1883, gives to towns, cities, and villages in counties which have adopted the county system of supporting the poor the right to appropriate license moneys to their own use, while in other towns, cities, and villages such moneys must be devoted to the support of the poor. It also makes an unjust distinction between those municipalities which have paid such moneys into the county treasury, and those which have not, legalizing the unlawful acts of the latter. It therefore violates the rule of uniformity in town and county government. Const., art. IV, sec. 23; *Rooney v. Supervisors*, 40 Wis., 23; *McRae v. Hogan*, 39 id., 529; *State ex rel. Walsh v. Dousman*, 28 id., 541. The legislature cannot change vested rights. *Hasbrouck v. Milwaukee*, 13 Wis., 37; 1 Kent's Comm., 455; Story on Const., sec. 1399; Cooley's Con. Lim., 358. As to what is a vested right, see *Dillon v. Linder*, 36 Wis., 354; Bouvier's Law Dict., Jus AD REM; Cooley's Con. Lim., 359. A right of action is a vested right. *Streubel v. M. & M. R. R. Co.*, 12 Wis., 74. See, also, *Cornell v. Hichens*, 11 id., 353, and cases cited in new edition.

ORTON, J. Sec. 32, ch. 34, R. S. 1858, provided that the majority of the board of supervisors of any county may determine to abolish all distinction between county poor and town poor in such county, and have the expense of maintaining all the poor therein as a county charge, and the board shall have authority to levy and collect on the taxable property in such county such expense in the same manner as other county charges. Sec. 16, ch. 35 of the same revision, provided that in counties where the county system of supporting the poor has been adopted, all moneys derived from licenses for the sale of intoxicating liquors shall be paid by the treasurers of the towns, cities, and villages, into the treasury of the county, semi-annually, and they shall be

applied solely for the purpose of defraying the pauper expenses of said county.

In 1877, the plaintiff, *Richland County*, by force of the first-above statute, adopted the county system of supporting the poor. In 1882 the village of *Richland Center*, in said county, collected, for licenses for the sale of liquors, the sum of $560, and failed to pay the same over to the county treasurer, and the trustees of said village, by resolution, determined to retain said fund to be expended for general village purposes. Sec. 1, ch. 156, of the Laws of 1883, provided that " the action of the various town boards, village trustees, and common councils in counties where the county system of supporting the poor shall have been adopted, providing for a different way of disposing of the license moneys than their payment into the county treasury for the support of the poor of the county, *is hereby in all respects legalized.*"

This last statute makes it optional with any town, city, or village, by ordinance or resolution, to devote this fund to other purposes than the support of the poor of the county in which the county system of supporting the poor had been adopted, and legalizes any such diversion of said fund which had already been made. The portion of this fund collected by the defendant village in 1882 had been retained and expended for common village purposes, by resolution of its trustees, and was as clearly within the power of disposition by the legislature as any fund that might thereafter be derived from the same source. So far as the plaintiff county is concerned with it, it was a fund already collected, and liable to be paid over to the county semi-annually, and still in the village treasury, the payment of which could be enforced by action at law; so that the act of 1883 was not really, though in form, a *legalizing* act. It was rather an act providing that all of such fund now in the hands of the village treasurer, and that may hereafter come into his hands, from licenses of the sale of liquors, may be devoted

to any purpose which the village trustees, by resolution, may determine. It is not in substance a *retroactive* act, but an act applying as well to the fund already collected as to that to be hereafter collected from the same source. The element of retroaction is not in the act in any proper sense, though the language is of a legalizing significance.

The resolution of the trustees diverting this fund already collected from the purpose prescribed by the then existing law, and its actual expenditure for some other purpose, would not place the village in default so as to give the county a right of action for it— if any such right they may have; there must have been a demand of the moneys for that year and a refusal to pay by the village treasurer before any action could have been brought for them, and before the act of 1883 took effect, in order to raise the question of a *vested* right of action.

The question of a vested right of action for, depended upon a vested right of property in, this fund, after the act of 1883. There is no reason for the distinction between the fund already in the hands of the village treasurer and that which might be thereafter collected from such source, so far as the operation and effect of the act of 1883 is concerned. The vested right of the county is in the fund and in that not collected as much as in that already collected. It is only the fund paid into the village treasury that that act attempts to dispose of for general village purposes, whether already paid in or to be paid in thereafter. Such moneys are not available for any purpose until they are collected from licenses. The right of the county does not attach to them until they are collected. The act of 1883 is no more unconstitutional as violating the vested right of property of the county in this fund paid to the village treasurer than in that not collected, for it is by the law existing previously that the whole of such fund is given to the county to aid in the support of the poor. So we say that this act is in no sense retroactive,

Richland County vs. The Village of Richland Center.

so far as this plaintiff county is concerned.   This act lays its
hand upon the whole of this fund, present and future, and
passes it over to the village to be expended as it may deem
expedient for the general benefit, in violation of the right of
the county to it by a former law, as claimed by the plaintiff.
We shall say no more of the vested right of action for this
fund than that if the legislature can take away from the
county its vested right of property in this fund on hand and
to be collected in the future, then, of course, the right of
action for the same is gone.   We shall therefore confine our-
selves to considering whether the county plaintiff had such
a vested right of property in this fund that the legislature
•could not take away.

It may be argued that this right is in the nature of a
contract, because it formed the consideration, in part at
least, for the action of the board of supervisors of the county
in adopting the county system of supporting the poor, rely-
ing upon this fund to aid the county in so doing.   (1) It
may be answered that the law authorizing the adoption of
such system also authorized the county to assess a tax upon
the property of the county to defray such expenses, without
any reference to this fund; and, indeed, this fund was not
then devoted by law to such purpose, and not until 1855[1];
and; since it has been, the same provision for taxation to
support the county poor remains in force.   We need to trace
that law only to the Revision of 1849, and the Revision of
1858 retains the authority to collect such a tax, and also
provides that this fund derived from licenses shall be paid
into the county treasury, to be used in support of the poor.
(2) The plaintiff county adopted the county poor system in
1877, before these moneys were collected, and they, at least,
could not have been an inducement to such action by the
county board.   It follows that the appropriation of this
fund to the county for the support of the county poor was a

See ch. 90, Laws of 1855.— Rep.

mere *gratuity*, which could be taken away at the pleasure of the legislature.

Very many reasons suggest themselves for not treating this fund as the property of the county, or this right as a vested one.

*First.* The licensing of intoxicating liquors is not the exercise of the taxing power of the state to raise revenue, which must be governed by constitutional provisions of grant and prohibition, but of the *police power* of the state. *Knowlton v. Supervisors*, 9 Wis., 410; *Fire Dep't of Milwaukee v. Helfenstein*, 16 Wis., 136; *Carter v. Dow,* id., 298; *Tenney v. Lenz*, id., 566; Cooley's Con. Lim., 706. As said by Chief Justice Shaw in *Comm. v. Alger*, 7 Cush., 53: "All property in the commonwealth is held subject to those general regulations which are necessary to the common good and general welfare." Judge Cooley says: "All contracts and all rights, it is declared, are subject to this power, and not only may regulations which affect them be established by the state, but all such regulations must be subject to change from time to time, as the general well-being of the community may require," etc. Cooley's Con. Lim., 710. Under this power the legislature imposes the necessity of obtaining a license for a given sum, to be paid into the treasury of the municipality granting the same; and, as a matter of course, the subordinate power of disposition of all such moneys must, under the same power, be vested in the legislature without constitutional restraint. This police power of the state not within constitutional provisions rests upon the maxim, *sic utere tuo ut alienum non lædas*, and it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others, and to control the product of such legislation. If, under such an unlimited power, it would be proper to consider expediency, then the municipality which may derive some compensation by a license fee

from a questionable and nearly contraband trade, fraught with many local evils, ought to have the benefit of such a fund. But this question is one of power, and not of expediency or policy; and the police power is most ample to justify any legislation that is deemed best, not only in respect to the licensing of the sale of liquors, but in respect to the product of such licensing.

*Second.* If the county, under the existing law, had a vested right to the moneys from this source, then the legislature could not repeal the license laws, or diminish the amount of license moneys, without an infringement of such right; and this may now be done at the pleasure of the legislature, by giving the authorities power to grant or refuse such license at pleasure. *State v. Downer*, 21 Wis., 274. If these license moneys of the village. belong to the county they cannot be diminished by the village board fixing a lower rate of licenses. If they can be diminished, they may be taken away.

*Third.* The right of property in goods or money implies a complete dominion over them,— to have and possess, and to sell or give them away at the pleasure of the owner. This is elementary law. This fund appropriated to aid in support of the poor of the county, in the hands of the county treasurer is a mere trust in the county for such purpose. And may not the state, the creator of such a trust, change its trustee, as well as the objects of the trust, at pleasure? The county does not own the money. If it did, then it could dispose of it for any purpose in the interest of the county. But it may be said even a trustee may sue for such trust moneys. Not after the creator or principal in the trust has taken such right away by appropriating the trust moneys to another purpose, and appointing another trustee.

*Fourth.* Such a fund consists of public moneys belonging to the state, as the result of the exercise of the police power

of the state to control and regulate the sale of noxious liquors. It is in the nature of a penalty, and in all such cases the legislative will is supreme as to its disposition. *Maryland v. B. & O. R. R. Co.*, 12 Gill & J., 399; *Coles v. Madison Co.*, Breese (Ill.), 154; *Parmelee v. Lawrence*, 48 Ill., 331; *Holliday v. People*, 10 Ill., 214; *Conner v. Bent*, 1 Mo., 169; *East Hartford v. Hartford Bridge Co.*, 10 How., 511; *People v. Morris*, 13 Wend., 325; *Sloan v. State*, 8 Blackf., 361; *Indianapolis v. Indianapolis Home, etc.*, 50 Ind., 215; 1 Dillon on Mun. Corp., § 63.

*Fifth.* Suppose the law of 1855 had provided that this fund should be paid into the state treasury on account of its general fund, and this same law of 1883 had authorized the retention of the fund for the general use of the towns, cities, and villages, would any one question the legislative power to do so? And yet, there would be just as much vested right of the state, in such a case, as in the present case of the county, which is a merely subordinate political and municipal body.

*Sixth.* Even if this fund became the corporate property of the county, absolutely, by grant of the legislature, the legislature could take it away. "It is an unsound and absurd proposition, that political power conferred by the legislature can become a *vested right*, as against the government, in any individual or body of men. It is repugnant to the genius of our institutions, and the spirit and meaning of the constitution, for by that fundamental law all political rights not then defined and taken out of the exercise of legislative discretion were intended to be left subject to its regulation. If corporations can set up a vested right against the government to the exercise of this species of power, because it has been conferred upon them by the *bounty* of the legislature, so may any and every officer under the government do the same." It is competent for the legislature to transfer the control of the streets even to a body foreign to the corpora-

tion, and the moneys to repair the same. 1 Dillon on Mun. Corp., 292; *Bristol v. New Chester*, 3 N. H., 524; *Benson v. Mayor of New York*, 10 Barb., 223; *People v. Walsh*, 96 Ill., 232. Whenever a grant is made by the state, of property to a public corporation, which it cannot take away, it is regarded as a private company, with the members of the corporation invested personally with the right, and that is the only exception. *Mount Pleasant v. Beckwith*, 100 U. S., 514; *Meriwether v. Garrett*, 102 U. S., 472.

*Seventh.* By the law of 1855, the state employed the agency of the county to expend this fund. The state may change such agencies at pleasure for the expenditure of any fund, or the disposition of any property, which has been derived from the state, or obtained by the exercise of the ordinary powers of government. *Butler v. Pennsylvania*, 10 How., 402; *U. S. v. Hartwell*, 6 Wall., 385; *Newton v. Commissioners*, 100 U. S., 548; *Warner v. People*, 2 Denio, 272; *People v. Green*, 58 N. Y., 295; *Perkins v. Corbin*, 45 Ala., 103; *People v. Lippincott*, 67 Ill., 333; *Augusta v. Sweeney*, 44 Ga., 463; *County Commissioners v. Jones*, 18 Minn., 199; *State ex rel. Tesch v. Von Baumbach*, 12 Wis., 310; *State ex rel. Martin v. Kalb*, 50 Wis., 178.

*Eighth.* If the position of the learned counsel of the respondent is tenable, that this fund cannot be transferred to the town, then the right of the county to it has never attached, for by the sovereign will of the legislature this fund has been taken away from the towns, cities, and villages to which it formerly belonged, and conferred upon the counties by the same right.

We will close this opinion by the citation of authorities deemed pertinent to the question.

*First.* The sale of intoxicating liquors is under the control of the legislature in every respect (1 Dillon on Mun. Corp., 362), and the power to license it may be transferred from one municipal body to another, in the discretion of the

legislature; and it follows that the license moneys may be so transferred. *Perdue v. Ellis*, 18 Ga., 586; *Trustees v. Keeting*, 4 Denio, 341; and other cases cited in note 2 to Dillon, *supra*.

*Second.* Municipal corporations have no private powers or rights as against the state. They may have lawfully entered into contracts with third persons, which contracts will be protected by the constitution, but beyond that they hold their powers from the state, and they can be taken away by the state at pleasure. 1 Dillon on Mun. Corp., 90.

*Third.* The legislature can legalize what they could have originally authorized. *Single v. Supervisors*, 38 Wis., 363; *Knapp v. Grant*, 27 Wis., 147; *Kimball v. Town of Rosendale*, 42 Wis., 412. There can be no doubt but that the legislature might have originally authorized the use of this fund by the village for general purposes, and, if so, then the use of the fund in this way by the village may be legalized.

*Fourth.* There is no constitutional inhibition against the passage of retrospective laws as such. The only question in such case is whether the legislature intended them to have a retroactive effect, and, if so, such effect is given to them by the courts. The objection in respect to such laws is not because they are retroactive, but that they disturb vested rights or impair the obligation of contracts which were acquired or assumed under them and dependent upon them. In such cases they are invalid, not because retroactive, but on other constitutional grounds. *Hasbrouck v. Milwaukee*, 13 Wis., 37; Cooley's Con. Lim., 230; *People v. Morris*, 13 Wend., 325; *Baltimore & S. R. R. Co. v. Nesbit*, 10 How., 395; *Norris v. Crocker*, 13 How., 429; *Watson v. Mercer*, 8 Pet., 88; *Ex parte McCardle*, 7 Wall., 506; *Butler v. Palmer*, 1 Hill, 324; *Foster v. Essex Bank*, 16 Mass., 245; *Grim v. Weissenberg School District*, 57 Pa. St., 432.

*Fifth.* There is direct authority for such legislation. In *State ex rel. v. St. Louis Co. Ct.*, 34 Mo., 546, it was held that moneys acquired by a county from the taxation of its citizens. is not the private property of the county, and an act directing the county to appropriate part of such funds to pay a portion of the police expenses of a city within its limits is not the application thereof to improper purposes, and that such an act is not objectionable for being retroactive or retrospective in its operation. "It takes away no vested right, nor does it impair the obligation of a contract." In *County of Richland v. County of Lawrence*, 12 Ill., 1, it was held that money, by an act appropriated to one public purpose, is subject to legislative control, and may be diverted at the will of the legislature, and that public or municipal corporations, in respect to public powers and duties granted them or required, are subject at all times to the control of the legislature. This was so held in respect to a fund raised by taxation for public improvements in the county, which was afterwards devoted to general county purposes. In *Regents of University v. Williams*, 9 Gill & J., 365, it was held that an act making an appropriation of public moneys for sanitary purposes, having in view the public health and the lives of the citizens, confers no vested right on the public corporation in such fund, and may be revoked at the pleasure of the legislature. In *Supervisors v. Whitewater*, 17 Wis., 193, it was held by this court that the county could not recover the moneys received by the village for licenses for the sale of intoxicating liquors, which, under the charter of the village, was given to it, notwithstanding the county had adopted the county system of supporting the poor. This provision of the charter took effect in 1858, and the general law giving all such moneys to such counties for the support of the poor was passed in 1855. It made no difference in the principle that the charter allowed the city to only retain all exceeding ten per cent. of such moneys. It was for that exceeding the

ten per cent. that the suit was brought. The case was precisely parallel to this, and it was held that the county could not recover. It is true this constitutional question was not raised, and probably because there was nothing in it. The case of *State ex rel. Voight v. Hoeflinger*, 31 Wis., 257, is analogous to this case in every respect of principle, including this constitutional question as well. Under the law, as it then stood, the proceeds of the sale of the swamp and overflowed lands were to be paid by the state to the county treasurers, and by them to the town treasurers, to be used by them for the drainage of the swamp and overflowed lands within the same. By a subsequent act all of this fund in the hands of the town treasurers of certain two towns, and all that might accumulate in the next succeeding three years, were set apart to be used for the building of a bridge across the Wisconsin river, within one of said towns, and for that purpose they were placed within the control of certain bridge commissioners appointed by the act. It did not appear that any contracts had been entered into anticipating this bridge fund. The town treasurer became relator for a *mandamus* to compel the county treasurer to pay over said moneys which had accumulated in his hands, and which was claimed belonged to said town for such drainage purposes, on the ground that the act diverting it for the purpose of building said bridge was unconstitutional and void, as violating a vested right. The circuit court so held, and granted the peremptory writ. On appeal to this court it was held that such judgment was erroneous, and that such moneys constituted a public fund within the full control of the legislature. Before the suit was commenced an act had been passed repealing the bridge act, but it had not taken effect before the disposition of the case in the circuit court; but it had taken effect before the disposition thereof in this court, and therefore, to save another action, the judgment of the circuit court was affirmed. Chief Justice DIXON uses the

Richland County vs. The Village of Richland Center.

following apt language in the opinion in that case, in respect to legislative control over such public funds: "No principle is better settled than that whatever is given by statute may be taken away by statute. . . . Supposing it to have been competent for the legislature to pass the act [the bridge act], of which we entertain no doubt, the money was that of the state by its legislature to give, and by the same sovereign power to withhold, whenever, in the judgment of the legislature, it was deemed expedient to do so."

Many other authorities might be cited to the same effect, but this opinion is much longer than it should be already in respect to a question of however great importance, yet concerning which there can be but little doubt when the nature of such public funds is considered. The very proposition that a municipal corporation, created and existing for public purposes only, can hold its public property or funds independent of the legislature, or as a vested right, unless private contracts depend upon them, is a contradiction in itself.

This court has been greatly aided in the investigation of this question by the very able briefs of the counsel on both sides, and especially by the brief of the learned counsel of the appellant, which reflects great credit upon his ability, learning, and research.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the suit.