Town of Winneconne, Appellant, vs. Village of Winne-conne, Respondent.

*May 14—June 10, 1904.*

*Villages: Invalid organization: Curative act: Obligation: When statute of limitations begins to run: License moneys, when payable by village to town: Statutes.*

1. A village, which had attempted to incorporate under a void statute, having been created a corporation by a so-called curative act (ch. 5, Laws of 1897) which also created and imposed upon it an obligation to pay certain moneys for which the village would have been liable had the previous attempted incorporation been valid, it is *held* that the time limited for the commencement of an action upon such obligation did not begin to run until the passage of said act of 1897, that being the date when the cause of action first accrued.

2. To bar the action in such a case at the end of the limitation period after the liability would have arisen had the original attempted incorporation been valid, would be to grant a privilege or immunity not conferred upon other debtors, since for a portion of such period no action could have been maintained; and a legislative intention to make such an exception to the general rule and policy of the law should not be inferred from doubtful language.

3. In sec. 1562, R. S. 1878, providing that all liquor-license moneys received by any village "which, under its charter, does not provide for the support of the poor therein," shall be paid to the town treasurer, the words quoted mean "which, under its charter, is not charged with the legal obligation to support such poor."

4. License moneys received by a village which was attempting to operate under the general powers of villages organized under ch. 40, R. S. 1878, but which had not, as provided in ch. 374,

Laws of 1885, assumed by ordinance the duty of caring for the poor therein, belonged, under sec. 1562, R. S. 1878, to the town, subject to the deduction of all sums actually expended therefrom for the support of the poor, as authorized by sec. 1562a, S. & B. Ann. Stats.

5. Sec. 1562, Stats. 1898, providing that "if any village does not under its charter provide for the support of the poor therein, and the town in 'which such village is situated does support the poor therein," all liquor-license moneys received by the village treasurer shall be paid to the town treasurer, was not intended to regulate or modify pre-existing rights or liabilities.

6. A retrospective purpose in statutes is not to be assumed in the absence of clear and direct language, except, perhaps, in those regulating merely the remedies.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action is in all respects upon the same cause as that attempted to be commenced against the village of *Winneconne* before the same had any existence as a legal corporation, which was considered and disposed of adversely on plea in abatement in the case reported in 111 Wis. 10, 86 N. W. 589, decided June 20, 1901. This action was commenced January 14, 1902; differing from the former only in alleging the attempted organization of the village in 1887 under ch. 40, R. S. 1878, and the legal incorporation thereof by ch. 5, Laws of 1897.

On the trial it was conceded that the attempted village of *Winneconne,* in the years 1891, 1892, and 1893, received liquor-license moneys to the amount of $2,796; that during the same period it paid out for the support of its poor $1,717.32, but received back from the county, as a rebate on the taxes levied against the village for the support of paupers, $261.10; that during said period the so-called village did in fact support its poor, but had not assumed the duty of supporting them by adopting an ordinance to that effect, as required by sec. 892, R. S. 1878, as amended by ch. 374, Laws of 1885, until the year 1895.

The trial court held that, since more than six years had elapsed from the time of the receipt of these moneys by the so-called village before the commencement of the present action, it was barred by the six-years statute of limitations, and rendered judgment dismissing the complaint, from which plaintiff brings this appeal.

For the appellant there was a brief by *Barbers & Beglinger,* and oral argument by *F. Beglinger.*

For the respondent there was a brief by *Bouck & Hilton,* and oral argument by *J. M. Olin* and *J. F. Kluwin.*

Dodge, J.    Inasmuch as respondent's counsel found much of their argument in support of the defense of the statute of limitations upon the retrospective language of the so-called curative act of 1897 (ch. 5), it seems necessary to recur preliminarily to the decision of this court in *Winneconne v. Winneconne,* 111 Wis. 13, 86 N. W. 590, and to point out that so far as such act attempted to cure the invalid incorporation of the village of *Winneconne,* or to give original validity or vitality to attempted corporate acts, it was held to exceed the constitutional powers of the legislature.    In deference, however, to the duty of courts to presume a purpose within legislative powers, we construed the act as intending no more than a present creation of such corporations, and denied any retrospective effect to language which might well have had such meaning had it been consistent with constitutional power or duty.    The effect of that decision and the preceding one (111 Wis. 10, 86 N. W. 589) was that prior to 1897 neither village nor obligation existed, that by such act was originally created the new corporate entity, and that by the same act were newly created the obligations therein described, and the same imposed on the new village, as the legislature might have imposed any other obligation.    Hence results that the liability or obligation to pay the amount of these license moneys, if it exists at all, was first created and imposed in

1897, and then for the first time accrued any cause of action therefor. This being so, how can we escape the conclusion that sec. 4222, Stats. 1898, offers no bar to suit thereon within six years after the act of 1897 took effect? That period is to run only after the "cause of action has accrued." Sec. 4219, Stats. 1898. This language is hardly ambiguous to require construction, but, if its meaning can be rendered more clear, that has been attempted by sec. 4249, by defining the starting point of the limitation period as "the time of the accruing of the right to relief by action, special proceedings, defense, or otherwise." The absolute right to sue at law, once created, persists until by some statute that right is barred. No such statute is suggested, save sec. 4222, under the terms of which, obviously, no bar had arisen.

At this point in the discussion, counsel earnestly press an argument which seems to have been deemed conclusive by the trial court, to the effect that certain language in the act of 1897 indicates legislative intent that statutes of limitation should be deemed to have run during the period of supposed existence of the village. The more important of the phrases relied on are the following: It is provided that all villages which have attempted incorporation are "hereby declared to be and to have been duly and lawfully incorporated;" that they are declared to be municipal corporations to the same extent and to have "all the powers, privileges, franchises, and immunities" of lawfully incorporated villages. "All contracts . . . and obligations made or entered into by said villages are hereby ratified and confirmed to the extent that the same would have been of force had the acts of the legislature been valid." "In all other respects, whether herein mentioned or referred to or not, the said villages are deemed to be and to have been lawfully incorporated and organized, having the same rights, powers, duties, obligations, and liabilities as if the same had been lawfully incorporated and organized." Doubtless there is much in this phraseology to

suggest a legislative purpose to merely cure the antecedent invalid acts alike of incorporation and of incurring obligations, had such purpose been permissible under the constitution, but we have already held that it was not permissible, at least as to the act of incorporating; hence that the legislature could not have had any retrospective purpose in that regard. There would be much reason for adoption of the view that, since this language had no retrospective meaning with reference to the creation of the corporation, it could evince none as to the other subjects covered by the same sentences. However that may be, still we cannot reach the view that any of this language at all clearly declares that statutes of limitation should commence to run in favor of these new corporations before the causes of action had so accrued that any relief could be sought in court. Counsel and trial court say that, if the recovery of these license moneys be not barred at the end of six years from the time they were received, this village will not have enjoyed the same "privileges and immunities" as if legally incorporated before that time, but is that so? The only privilege or immunity acquired by any debtor, individual or corporate, is freedom from liability at the end of the limitation period after the cause of the action *accrues.* If the right to sue did not arise upon the receipt of these moneys, the cause of action did not then accrue. That no such right to sue did then arise is already settled. The retrospective language was not effective to confer such rights, as already decided. 111 Wis. 10, 86 N. W. 589. It would therefore be conferring a wholly different immunity on this defendant to accord it the bar of the statute of limitations at the end of six years from the date of collection of these licenses, although during five of those years no right of action therefor had existed. Our statutes of limitation are the expression of a firmly established general policy that plaintiffs shall lose no rights by delay, less than the limitation periods, after they have opportunity to sue. While doubt-

less the legislature is free, within reasonable limits, to modify that policy, even with reference to certain classes of demands or of defendants, the purpose to do so is not to be lightly inferred from doubtful language. Since the legislature has not seen fit to say in terms, as they so easily might, that as to the obligations created and imposed on these new villages limitation periods should commence to run, not from the accrual of the causes of action, but from some other date, we cannot conclude that any exception to the general rule and policy was intended. We therefore decide that the present action was not barred by limitation.

2. Having thus concluded that there is no bar of limitations to the maintenance of the present action, the next question is whether there is liability from the village to the town for the license moneys collected in excess of the sums actually expended to support the village poor. This question is governed by a series of statutory provisions: first, sec. 1562, R. S. 1878, which provides, where the township system of poor relief obtains, that all "license moneys received by any village which, under its charter, does not provide for the support of the poor therein, shall be paid to the town treasurer." The words "which, under its charter, does not provide for the support of the poor therein," obviously mean "which, under its charter, is not charged with the legal obligation to support such poor." That construction is assumed in *Oak Grove v. Juneau,* 66 Wis. 534, 29 N. W. 644, and *Plainfield v. Plainfield,* 67 Wis. 526, 30 N. W. 673, and is confirmed by the subsequent legislation in 1887 authorizing merely an offset against license moneys of all sums actually expended, when the village does in fact support its poor. The propriety of this construction is rendered obvious by the fact that, until the village has become legally obligated for such support, the town is not discharged therefrom; and however completely the village may have, in fact, supported all of its poor of which it had knowledge, there remains always the

possibility that there have been other expenses, by other counties or towns, for illustration, which may be a legal charge against the municipality on which rests the legal obligation, and which, if it must be enforced by suit, can only be against the town. Nay, its payment might at any time be successfuly refused by the village or, probably, enjoined by a taxpayer. Hence, until the village has come to be the municipality legally obligated, it can never be said with certainty that the town has been freed from all liability. At the time of the receipt of the license moneys, in 1891 to 1894, inclusive, the so-called village of *Winneconne* was attempting to operate under the general powers of villages organized under ch. 40, R. S. 1878, which did not confer or impose power or authority on the village, except as by the amendatory act (ch. 374) of 1885 it was provided that the duty might be assumed by ordinance. It was distinctly held in *Oak Grove v. Juneau, supra,* that this act did not arouse power or authority until an ordinance had been adopted. The so-called village of *Winneconne* did not adopt any ordinance until after the time covered by the claim now presented. The conclusion seems irresistible that these license moneys belonged to the town, and it was the duty of any village treasurer receiving them to pay them over to the town, subject, however, to the deduction of all sums actually expended, as authorized by ch. 473, Laws of 1887 (sec. 1562a, S. & B. Ann. Stats.). This was the view taken by the court below, as expressed in an opinion appearing in the record, and with it we fully concur. Respondent's argument against this conclusion proceeds first on an assertion of practical equivalence between actual relief of the poor within the village, and the legal assumption of the duty of such relief. The fallacy of this argument has already been pointed out, in the suggestion that the town meanwhile remained liable for any support which might have been accorded to paupers having

settlement within the village by other persons or corporations, so as to constitute a legal claim.

The next contention is that the Revised Statutes of 1898 (sec. 1562), requiring the village to pay over only when it does not, under its charter, provide support, "and the town in which such village is situated does support the poor therein," ought to control. With this view we cannot concur. There is nothing in that section, as now worded, to indicate a purpose to regulate or modify pre-existing rights or liabilities. It is entirely apparent that its scope is to regulate the disposal of license moneys received after it came into effect. Doubtless, as respondent argues, it would have been within the power of the legislature to have legislated with reference to rights to license moneys which had been previously collected. *Richland Co. v. Richland Center,* 59 Wis. 591, 18 N. W. 497. But a retrospective purpose is not to be assumed in the absence of clear and direct language, except, perhaps, in statutes regulating merely the remedies. *Seamans v. Carter,* 15 Wis. 548; *Finney v. Ackerman,* 21 Wis. 268; *Vanderpool v. L. C. & M. R. Co.* 44 Wis. 652; *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420, 427, 83 N. W. 706.

We discover no escape from the conclusion reached by the trial court that an obligation to pay over these license moneys was by ch. 5, Laws of 1897, imposed upon the then created village of *Winneconne.* The amount recoverable in this action is not in dispute.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff for $1,078.68, together with interest from January 14, 1902, and costs.